# J. Shaaff Stocket, Adm'r of Thos. M. Locke, and others, *vs.* William S. Holliday and wife, and others.

A contract which can be enforced in equity, may be entered into between husband and wife, for the transfer of property from the former to the latter for a *bona fide* and valuable consideration.

The interest which the wife has in a mortgage executed to her before marriage, whether as respects her right of survivorship or her equitable claim to a separate provision, is sufficient to form the consideration of such a contract with her husband.

A deed of trust by a husband for the benefit of his wife and children, stated, *as the consideration* upon which it was executed, that the husband agreed with the wife to make the conveyance in consideration of her uniting with him in assigning *her mortgage* in part payment of land purchased by the husband. HELD:

That the deed itself is *prima facie* proof of the *truth* of this consideration, even as against creditors of the husband assailing the deed for fraud, until contradicted by evidence offered by them.

A deed conveying both real and personal property, and acknowledged in the mode provided for the conveyance of real estate, is effectual to convey such estate though it may not be sufficient to convey the personalty.

A deed conveying real and personal property to a trustee for the benefit of a *feme covert* and her children, is not a *mortgage* but a *deed of trust*, and therefore need not be sworn to under the act of 1846, ch. 271.

APPEAL from the equity side of the Circuit Court for Anne Arundel county.

The object of the bill in this case, filed by the appellants, creditors of Wm. S. Holliday, was to vacate a deed executed by Holliday to N. B. Worthington, in trust for the benefit of Caroline Holliday his wife and her children. This deed dated the 17th of April 1852, states, as the *consideration* upon which it was executed, that:

"Whereas the said William on or about the 24th of December 1847, purchased from a certain Thomas J. Brice and John Brice, a certain farm situated in the county aforesaid, known by the name of the "Plains farm," together with all the stock, cattle, farming utensils, then growing and being thereon, at, and for the sum of $9500; which said farm together with said stock, farming utensils and crops, was conveyed to said Holliday by said Thomas J. Brice and John Brice, by deed bearing date the day and year last aforesaid, and recorded, &c.; and whereas, in part payment of the said purchase money, the said William S. Holliday and the said Caroline his wife, formerly Caroline Worthington, assigned and transferred to the said Thomas J. and John Brice, a certain mortgage executed to the said Caroline Worthington before her intermarriage with the said William, by one Daniel Duvall, of a certain tract of land situated in the county aforesaid, called lot No. 1 of Worthington's Resurvey, being the same land which was devised to the said Caroline by the will of her father, the late Brice J. Worthington, and which the said Caroline before her said marriage had sold and conveyed to said Duvall, by deed bearing date the 24th of December 1845, and recorded, &c., at, and for the sum of $4000; to secure the

61     v.9

payment of which sum the said mortgage was executed to the said Caroline by the said Duvall on the same date as the deed last aforesaid, and recorded, &c.; upon which said mortgage there was due at the date of the said assignment, the sum of $3744 principal, and $131 interest, as will appear by reference to said deed of assignment bearing date the 24th of December 1847, and recorded, &c.; *and whereas at the time of said assignment it was agreed and understood by and between the said William and the said Caroline his wife, that he, the said William, should secure the said Caroline for and on account of said sums, so as aforesaid due to the said Caroline* on said mortgage, with legal interest thereon, *by a conveyance* of said farm, stock, farming utensils, &c., subject to a mortgage to the said Thomas J. and John Brice, to secure the balance of the purchase money therefor, *to said Caroline or to some person in trust for her use, in pursuance of which agreement and understanding these presents are executed:* Now this indenture witnesseth, that for *and in consideration of the premises* and of the sum of five dollars," &c. The deed then conveys to the trustee, Worthington, his heirs, executors, administrators and assigns, "all the right, title and interest, and estate of him, the said William S. Holliday, of, in and to" the farm so as aforesaid purchased from the Brices, "together with all the stock of horses, cattle and sheep, and farming utensils," in *trust* "for the sole and separate use and benefit of the said Caroline Holliday, for and during the term of her natural life, free from the control of her said husband William S. Holliday, or any future husband, and after the death of the said Caroline, in trust for the use and benefit of her children and their heirs." The deed was acknowledged in the mode provided for the conveyance of *real estate*, and there was no affidavit by any one as to the *bona fides* of the consideration.

The bill filed by the creditors of Holliday on the 21st of December 1852, alleges, in substance, that Holliday being at the time largely indebted to the complainants and others, who had sued him for their claims, and some of whom recovered judgment at the April term, and others at the October term 1852 of the circuit court for Anne Arundel county, did, for

the purpose of delaying and hindering them in the collection of their debts, and cheating and defrauding them out of the same, execute the deed above mentioned, a copy of which is filed as an exhibit with the bill; that no understanding or agreement of the sort set out in the deed, as the consideration thereof, by and between Holliday and his wife, ever existed, but that the same was conceived on the eve of the rendition of divers judgments against him, and upon being pressed and sued by his creditors, as a pretext for the fraudulent purpose of depriving his creditors of the fruits of their judgments and hindering the recovery of their debts, and placing beyond the reach of his creditors, all his property of every description then available for the payment of his debts, all his other property having been, before that time, placed beyond their reach by other conveyances; and as a circumstance in support of this charge the bill alleges, that during all the time between the date of this pretended agreement and the deed, Holliday continued in possession and absolute ownership and control of all the property conveyed by the deed, using the whole and disposing of portions thereof at various times, without any suspicion on the part of the complainants or any one else, that the same was subject to the agreement mentioned in the deed; that if any such agreement was ever made it was studiously kept secret from the complainants and his other creditors, who gave him credit by reason of his apparent ownership of property in his control; that all their debts were contracted prior to the date of the deed and subsequent to the time of the alleged agreement, and therefore, even if the agreement was made at the time alleged, the postponement of its execution until the debts were contracted with complainants and others without notice thereof, and in reliance upon the title and ownership thus held out to the world, the same is void in respect of such debts and incapable of execution to their prejudice. The bill then prays for an answer, but not upon oath, that the deed may be vacated, the property sold to pay debts, and for general relief.

The answer of Mrs. Holliday denies that her husband executed this deed for the purpose of defrauding his creditors, but avers that he executed the same *bona fide*, and for a good and

valuable consideration, as stated in the deed; and she then states the facts in relation to its execution, the same as set out in the deed, and avers that previously and at the time of the assignment of her mortgage to the Brices, it was expressly agreed and understood between her husband and herself, that if she would unite in this assignment, he would, in consideration thereof, secure her out of the property purchased from the Brices the amount so paid off by her individual debt, and that her husband before and at the time of this assignment confidently assured her that her interest in the property should be faithfully secured to her; and but for this agreement and assurance she never would have consented to execute the assignment; that her husband was in conscience bound and had a perfect right to secure her by this deed, and she claims the full benefit of such conveyance according to the terms and true construction thereof. She denies all the allegations of fraud, and avers that she knows nothing of the indebtedness of her husband. She admits that between the date of the agreement and the deed her husband remained in possession of and used the property, but denies that he ever disposed of any portion of the real estate, and that he only disposed of so much of the personal property as was naturally used and consumed on the farm, such as farming utensils, &c., which he replaced by the purchase of others of a similar description, all of which she is advised he had a perfect right to do.

The answer of Holliday contains the same statement in regard to the execution of the deed, and charges that he never would have so applied the separate estate of his wife, or have advised or consented to such application, except upon the express condition that she should be secured on account thereof. His answer also contains explicit denials of all the charges of fraud contained in the bill  The answer of the trustee and the infant child of Mrs. Holliday are not material to be stated.

A decree was then passed, by consent, for the sale of the property, and the question of the application of the proceeds to the trustee under the deed or to the creditors, after payment of the mortgage debt to the Brices, about which there was no dispute, reserved for the decision of the court, and the property

was accordingly sold, the sale of the real estate amounting to $10,580.

The only evidence in the case was a written agreement of facts, in which it was admitted that the several conveyances referred to in the deed of trust to Worthington were duly executed and recorded, and that copies of them filed as exhibits with the bill and answers should be used as if proved under a commission; that Holliday and wife were married on the 27th of October 1847; that the land mentioned in the mortgage from Duvall was devised to Mrs. Holliday by her father and constituted her entire maiden real estate, and that this mortgage, on which was due the sums stated in the assignment thereof, and in the deed to Worthington, was assigned to the Brices as stated in the several exhibits filed as evidence in the cause; that at the date of the deed to Worthington, Holliday was indebted to various persons, as appears by the auditor's statement of claims, (these claims, as stated, amounted to $17069.48,) but no judgments were recovered against him until after the date of the deed; that besides his interest in the property sold under the decree, Holliday was, at the date of this deed, possessed of but a small amount of personal property; and that the price at which the property was sold by the trustees represented its true value at the date of the deed.

The cause was then argued and submitted for decision upon the question of the validity of the deed to Worthington. The court (BREWER, J.) delivered the following opinion in the case:

"This case has been fully argued and submitted, by agreement, on the auditor's statement, in the same manner as if the question now was, whether the complainants were entitled to the decree prayed for, a decree for a sale having been also passed by agreement and the fund in court.

"The defendant, William S. Holliday, being indebted to the complainants and others in a large amount, just before the court at which most of them obtained judgments, to wit, on the 17th of April 1852, conveyed a tract of land, of which he was seized, and some personal property, both of which had been before mortgaged to the Brices, to Nicholas B. Worth-

ington, in trust for his, the said Holliday's, wife and child. The Brices filed a bill to sell this property under the mortgage, and the complainant creditors filed a bill to set aside the deed to Worthington for fraud. These cases were consolidated, and a decree passed by agreement for a sale, which was made, and the proceeds, after paying the Brices' mortgage, respecting which there is no dispute, are now to be distributed on the auditor's report.

"The complainants allege:—1st, that the deed to Worthington was voluntary and without any valuable consideration, and therefore void as to antecedent creditors; and 2nd, that it was an actual fraud under the circumstances of the case. With regard to the first point, it is very important to ascertain the facts in reference to the consideration of the deed.

"The complainants have not required the defendants, Holliday and wife, and the trustee, Worthington, to answer the allegations of the bill on oath, and have carefully avoided the use of them, by reading them in evidence under the act of 1852, ch. 133, and no evidence has been taken by either party on that subject. Where then are we to look for this proof? Mrs. Holliday, in her answer, alleges, "that the deed was executed *bona fide*, and for a good and valuable consideration, as stated in said deed and as hereinafter mentioned," and then sets forth, in substance, that the land and personal property so conveyed to her trustee, was purchased by her husband from the Brices, and that she, at the time of her marriage and of the said purchase, held a mortgage from Daniel Duvall, in her name, on land, taken to secure the purchase money on a sale thereof to him, and on which there was due $3744 principal, and $131 interest, and that it was previously, and at that time, expressly agreed and understood, between her husband and herself, that if she would unite in the assignment of her mortgage debt to the Brices, in part payment of the purchase of the real and personal property so sold by them to him, he would, in consideration thereof, secure to her the amount of the said mortgage debt out of the said real and personal property. That in consequence of said agreement, and without which she never would have done so, she did unite with her

husband in the assignment of the said mortgage to the said Brices, which was taken by them in full payment of so much of the purchase money. The property was then conveyed by the Brices to her husband, and by him and her mortgaged to them, to secure the payment of the residue of the purchase money. The deed sought to be avoided recites the same facts, and refers to them as its consideration, and contains no other consideration except the usual, formal and fictitious one, of $5 current money. The complainants contend, that this is matter of defence set up by the defendant, and to avail her must be proved by her, the defendant, that the deed itself is *prima facie* evidence of the truth of the consideration set out in it, and there being no evidence to controvert it, is conclusive. The defendant, I think, is right.

"Every deed is effectual according to the consideration expressed in it. If for love and affection, it is a good consideration, and, in general, not available against antecedent creditors, and the creditor seeking to set it aside need not prove the consideration. If for money, it is for a valuable consideration, and no proof of the consideration is required. If the consideration is impeached by testimony, then it must be supported in the same manner; but when no testimony is taken, the deed, itself, being *prima facie* testimony, is conclusive. If the grantee could be required to prove the truth, by the mere allegation that it was false, of the consideration stated in his deed, he might be called upon to do so at any period, however distant, which would be onerous and dangerous in the extreme. The court would have to treat the statement of the consideration as a *mere recital*, and, as such, evidence only against the grantor. Recitals of independent, extraneous facts in a deed are estoppels against the grantor, he cannot deny them, but they estop and are evidence against nobody else. A recital of the facts constituting the consideration, and made the consideration in the body of the deed, is *prima facie* evidence against all the world. It is a constituent part of the deed, without which it would not operate. In ordinary conveyances for money the consideration is stated simply in the body of the deed. But where the deed is given in pursuance of a contract entered

into at an earlier period, it is usual to recite the contract and refer to it as the consideration in the body of the deed, and the same where a mortgage is given for an antecedent debt, or to secure the payment of any debt by bond or note. If the present defendant was seeking the performance of the contract recited in her deed, she would be required to prove the contract first, but the contract being already performed, she rests upon her deed. If it be valid upon its face, it remains so until its invalidity be shown by other testimony.

" In the case of *Faringer vs. Ramsay*, 2 *Md. Rep.*, 375, which was a bill in behalf of creditors to set aside a deed for fraud and to establish a resulting trust, the court, treating it as a well established principle, say: ' It must be recollected that the deeds are *prima facie* evidence of the verity of their contents.' It is treated in the same way in 3 *Md. Ch. Dec.*, 171, *Anderson vs. Tydings; Ibid.*, 468, *Young's Estate*, and 2 *Md. Ch. Dec.*, 226, *Glenn vs. Randall.* In the last case the Chancellor says, that the complainant was compelled to read the answer, 'for the purpose of repelling the *prima facie* evidence of payment contained in the deeds themselves.'

" Assuming then that the consideration stated is established, the next question is, whether it is a valuable consideration, or a good one merely, constituting only a moral obligation on the part of the grantor? The complainants contend, that the husband gained, and the wife parted with, nothing, by uniting in the assignment of the mortgage; that he had complete control over the mortgage debt, could have assigned it without her consent and discharged from her equities.

" The defendants deny the proposition, and say, that an assignment by him alone would be subject to her right of survivorship, and that as it was a claim which could only be recovered in a court of equity, she would be entitled to a provision out of it, both as against her husband and his assignee, and that either of these rights constituted a valuable consideration, sufficient to sustain the promise of her husband against his creditors, to secure the amount of the said debt out of the real and personal property for which it contributed to pay.

" With regard to the wife's right of survivorship against

the assignee for valuable consideration, of the husband, the authorities are in conflict, but most, if not all, the elementary writers, upon a full examination of the case, have come to the conclusion that she has no such right.

" *Chancellor Kent*, in *Vol.* 1, *page* 137, of his *Commentaries*, says: 'The doctrine that the husband may assign the wife's *choses in action* for a valuable consideration, and thereby bar her of her right of survivorship in the debt, but subject nevertheless to the wife's equity, has been frequently declared, and is understood to be the rule best sustained by authority.' The authority referred to by the defendant's counsel, 32 *Law Lib.*, 142, *Roper on Husband & Wife*, sustains the position, that the husband, *at law*, cannot assign his wife's mortgage in fee so as to deprive her of her right of survivorship, because she must be a party to a bill for foreclosure, the legal estate remaining in her. Such an interest is therefore classed among her *equitable choses in action*, and in his subsequent consideration of them, (*page* 149,) Roper also comes to the conclusion, that a particular assignment for valuable consideration would, in equity, deprive her of that right, though he thinks the question not yet clearly settled by authority.

" The same opinion seems to have been entertained by our own Court of Appeals, in the case referred to, of *Duvall vs. Farmers Bank*, 4 *G. & J.*, 282. The counsel for the bank, in his argument, says: 'The assignee stands in a better condition than the assignor. If it were not so, then upon the death of the husband, the wife surviving, she would be entitled to the whole by survivorship, which is not pretended.' The counsel for the appellant replies: 'The right of the wife to an equitable provision out of her estate, exists both against the husband and his assignee for value, whatever may be the effect of such assignment on the right of survivorship.' The court say: 'The wife's right of survivorship, it perhaps is not necessary critically to examine, because any claim to survivorship which she might have would always be subject to the payment of the equitable assignee.' All the cases, however, establish the proposition, that the wife is entitled in a case like the present to an equitable provision out of the fund. It is not

62 v.9

necessary to make any lengthened examination of it. The case just referred to, in 4 *G. & J.*, 282, and the case of *Wiles vs. Wiles*, 3 *Md. Rep.*, 1, are conclusive upon it. The complainants admit the general principle, but contend, that the assigneee of the husband alone in this case could have recovered the debt without resort to a court of equity, or, at least, without the necessity of making the wife a party to the proceeding. There was no separate obligation upon which suit might have been brought at law, though it might have been on the covenant in the mortgage, but a judgment then might have been of no avail; the party obtaining such judgment could not certainly have obtained the benefit of the whole security; an ejectment would not lie on the assignment of the husband alone; that benefit could be obtained by bill in equity, and the fund being once in a court of equity, according to the authorities before referred to, that court might make a provision for the wife on bill or petition, whether she were made a party or not by the complainant. But it would have been necessary to make her a party. She held the legal title, and the mortgagor could not be compelled to pay the mortgage debt without a transfer of the legal title. The acts of 1833, ch. 181, and 283; 1839, ch. 26, and 1846, ch. 279, do not, either of them, apply to this case where the mortgagee is in being. Whether Mrs. Holliday had in this mortgage a right of survivorship, or a right to a provision only, it was a right, the transfer of which would constitute a valuable consideration for the agreement on the part of her husband, to secure to her the amount of the mortgage debt out of the property for which it contributed to pay. It is true that the provision which might have been made for her might not have equalled in amount the mortgage debt. We have no *data*, however, to ascertain what it might have been. The extent of the provision would seem in every case to be governed by its peculiar circumstances, and to be regulated by the whole of the wife's fortune and what the husband had previously received. 4 *G. & J.*, 282. How much Mr. Holliday received of his wife's fortune, if any, independent of this debt, we have no evidence, but where there is a valuable consideration for a contract, it certainly is not neces-

sary that the *quid pro quo* should be of equal value, more especially where, at the time of the contract, there was, as in this case, a moral obligation also, which did not conflict with the claims of the present complainants, they not being at that time his creditors. The defendants contend that this is a resulting trust, the land having been paid for with the money of Mrs. Holliday. The doctrine of resulting trusts would hardly apply to the use of his wife's funds in that manner by the husband, unless it was a separate estate and interest in her, and if so used by virtue of a contract with her, this doctrine would be subject to the principles before referred to.

" It is next to be considered whether there is any actual fraud in this transaction. There is no positive proof of any, and I have not been able to find, in the circumstances of the case, any fraud on the part of Mrs. Holliday, or even of her husband. He seems to have been an extravagant and improvident man, incurring many debts without looking with sufficient care to the means of their payment. How many men do the same, whose conduct, though we cannot approve it, is not sufficient to brand them with intentional fraud? Whether it did actually deceive his creditors or not, we are not informed. Either they may not have known of the debt due by him to another, or been at all aware of the extent of his indebtedness, and may have relied for payment on his crops. Merchants generally look more to the probable voluntary payment, than to the ultimate responsibility arising from the ownership of property, which would have to be enforced by process of law. Negligence may have induced him to postpone a compliance with the contract with his wife, until he saw it could no longer be delayed with safety to her. There is nothing to show that Mrs. Holliday was aware of the extent of his indebtedness at any time, and it would not be fair to infer from her acquiescence in the delay, that she designed thereby to perpetrate a fraud, when her conduct may be more naturally accounted for from the probable unwillingness to importune her husband to do what she saw no pressing occasion to hasten.

" A point was started in the argument of this cause to which the attention of counsel seemed not to have been before directed,

and which, therefore, was but slightly argued, to wit: that the trust deed from Holliday to Worthington is in fact a mortgage, and not having appended to it the affidavit of the mortgagee, as required by the act of 1846, ch. 271, is not valid and effective. This idea must have occurred long after filing the bill. There is no reference to the deed as a mortgage in the bill. It is treated throughout as a fraudulent deed of trust, conveying the whole property in the land and personalty to the wife and child, and alleges that the trustee was ignorant of, and did not consent to, its execution, and the answer of Mrs. Holliday alleges, that it is a legal, valid and operative deed, according to its terms and the true construction thereof. This question appears not to be at issue between the parties, and if the deed be inoperative and void, the court has nothing to annul or avoid. The creditors have their remedy at law, and might have proceeded at law to sell the equitable interest of Holliday. The law seems to apply to deeds of mortgage, technically such, and to bills of sale from grantor to grantee, for the benefit of such grantee. A deed such as this is an absolute conveyance, containing no right of redemption. So an absolute deed with a defeasance, and containing a right of repurchase, which might, according to the real intention of the parties, be treated in equity as a mortgage, yet would not be considered a formal and technical mortgage embraced by the act of 1846. 5 *G. & J.,* 75, *Hicks vs. Hicks.* 6 *Do.,* 275, *Dougherty vs. McColgan.* Mrs. Holliday is the *cestui que trust,* not mortgagee or grantee. Worthington is a mere trustee, who, the complainants allege in their bill, was not even aware of the instrument. The debt to be secured, if that merely was the object of the deed, was due to Mrs. Holliday, but the deed conveys the property to her for life only, with remainder to her infant child, subject to the mortgage to the Brices, the residue of the property being worth nearly about the amount of the claim. Mrs. Holliday has not objected to the conveyance in that form, who, then, is the mortgagee required to make the affidavit? the trustee? or Mrs. Holliday and the infant? or both? The act cannot apply to a case of this kind, and there is no reason why a court of equity should, by construction, extend it to

cases *in pari ratione*, to defeat the honest claims of a *feme covert* and an infant. Mrs. Holliday's claim under the deed must be allowed in preference to the claims of the creditors."

An account was then stated by the auditor, in which the proceeds of sale, after payment of the mortgage to the Brices, were applied, so far as they would go, to the payment of the claim of Mrs. Holliday under the deed, including *interest* upon the original sum due on her mortgage at the date of its assignment. This account was ratified by the court, after exceptions filed thereto by the creditors, and from the decree ratifying it the appellants, a portion of the creditors, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Frank H. Stockett, Brice T. B. Worthington,* and *Thos. S. Alexander,* for the appellants, argued the following points:

1st. That the assignment of the mortgage from Duvall, by the joint act of Holliday and wife, to the Brices, in part payment of property *bought by* and *conveyed to Holliday,* was an absolute appropriation of the wife's interest in that mortgage, and a reduction thereof, by her consent, into the possession of the husband, and for his absolute interest and use, in December 1847. 11 *G. & J.*, 186, *Chase vs. Lockerman.* 4 *Kent's Com.*, 193. 4 *Md. Rep.*, 280, *Peacock vs. Pembroke.* 6 *Md. Rep.*, 375, *Turton vs. Turton.* 22 *Conn.*, 58, *Tuttle vs. Fowler.* 15 *New Hamp.*, 564, *Poor vs. Hazleton.* 5 *Ired. Eq. Cases,* 111, *Weeks vs. Weeks.* 1 *Rawle,* 279, *Hartman vs. Dowdel.* 7 *Watts & Sergt.*, 168, *Shuman vs. Reigart.* 3 *Russell,* 65, *Honner vs. Morton;* and the case of *Bates vs. Dandy,* 3 *Eng. Ch. Rep.*, 301. 6 *H. & J.*, 32, *State vs. Krebs.* 2 *Kent's Com.*, 134, 136, 141. *Roper on Husband & Wife,* 196. 5 *Johns. Ch. Rep.*, 196, *Schuyler vs. Hoyle.* 1 *Md. Ch. Dec.*, 507, *Atkinson vs. Phillips.* 5 *Gill,* 460, *Worthington & Anderson, vs. Shipley. Acts of* 1833, *ch.* 181, *and* 283. 1839, *ch.* 26. 1846, *ch.* 279. 2 *Md. Rep.*, 297, *Newcomer vs. Orem.*

2nd. That by virtue of the possession and control by Holli-

day of the property bought by him from the Brices, and his record title thereto, the debts incurred by him after the conveyance from the Brices, attached in equity to the property. That it would be a fraud upon these creditors to allow Holliday to convey the property in alleged execution of an agreement with his wife, the existence of which was kept secret from them, and thus defeat their equity. 1 *Md. Ch. Dec.*, 526, *Brooks vs. Dent.*  2 *Do.*, 270, *Gill vs. Griffith & Schley.*  6 *Md. Rep.*, 418, *Bowie vs. Stonestreet.*  3 *Johns. Ch. Rep.*, 488, *Reade vs. Livingston.*  12 *Ves.*, 67, *Randall vs. Morgan.*  7 *Gill*, 354, *Clabaugh vs. Byerly.*  2 *Md. Rep.*, 365, *Faringer vs. Ramsay.*  4 *Mylne & Craig*, 179, *Nicholson vs. Hooper.*  16 *Ves.*, 125, *Dalbiac vs. Dalbiac.*  1 *Johns. Ch. Rep.*, 300, *Frost vs. Beekman.*  7 *Gill*, 404, *Gardner vs. Lewis.*  3 *Md. Rep.*, 213, *Glenn vs. Grover.*  2 *Md. Ch. Dec.*, 262, *Gill vs. McAttee.*  1 *Story's Eq.*, sec. 334.

3rd. The recital of a previously made agreement to convey or secure, will not be allowed to have the effect, by relation, to the period of entering into the alleged agreement to defeat the rights of third parties, which accrued between the making and executing the alleged agreement.  7 *Gill*, 354, *Clabaugh vs. Byerly; 5 Md. Rep.*, 66, *Albert & Wife, vs. Winn & Ross,* and also authorities under the preceding points.

4th. That the deed by Holliday, in April 1852, to Worthington, in trust for Holliday's wife and children, was a *voluntary* coveyance, fraudulent against existing creditors and void. 1 *Md. Ch. Dec.*, 507.  *Ibid.*, 523.  11 *Wheat.*, 199, *Hinde vs. Longworth.*  12 *Johns.*, 536, *Verplank vs. Sterry.*  5 *H. & J.*, 372, *Jones vs. Slubey.*  1 *Story's Eq.*, secs. 353, 362, 363. 5 *G. & J.*, 432, *Birely & Holtz, vs. Staley.*  1 *Conn.*, 525, *Salmon vs. Bennett.*  3 *Md. Rep.*, 1, *Wiles vs. Wiles.*

5th. That this deed is void as against the appellants and other creditors of Holliday, for want of due *execution*, it being a conveyance of *personal* as well as real property, and not being sworn to as required by the acts of 1846, ch. 271; 1847, ch. 305, and 1849, ch. 199, and being thus void *in part* as to personalty, it is void *in toto.*  7 *Gill*, 481, 482, *Albert & Wife, vs. Winn & Ross,* and cases there cited.

6th. That the court erred in the order ratifying the auditor's account, because it allows *interest* on the claim of Mrs. Holliday, from the date of the assignment of the mortgage to the Brices, (24th of December 1847,) to the day of sale, whereas, if this claim is entitled to any portion of the proceeds of sale, no allowance can be made for anything beyond the *principal* of the mortgage debt up to the day of sale. 6 *Md. Rep.*, 418, *Bowie vs. Stonestreet.*

*Oliver Miller* and *Alex. Randall* for the appellees, argued:

1st. That it is perfectly competent for husband and wife to contract between themselves for a transfer of property, from the former to the latter, for a *bona fide* and valuable consideration. 6 *Md. Rep.*, 421, *Bowie vs. Stonestreet.* The relation of debtor and creditor may exist between them. 1 *Gill*, 28, *Stevenson vs. Reigart.*

2nd. The deed in this case being assailed for fraud, under the statute of 13*th Eliz.*, *ch. 5*, to sustain it, it must be shown to be both for a *valuable* consideration *and bona fide*. If the deed is a *voluntary* conveyance, we admit it cannot stand, as the grantor was at the time largely indebted; this, however, we will show is not the character of this deed. It must be borne in mind that the deed is not assailed under the insolvent laws, but simply under the statute of *Eliz.* The general principles:—1st, that a debtor in failing circumstances may prefer one creditor to another by a *bona fide* conveyance; and 2nd, that where *fraud* is alleged, the *onus* of proof is on the party alleging it, as fraud is never presumed, are therefore applicable to this case.

3rd. The question then recurs, was this deed executed for a *valuable* consideration? To answer this we must ascertain what that consideration is. The deed itself, upon its face, sets out the consideration to be a *contract* between Holliday and his wife to convey the property to her, in consideration of her uniting with him in the assignment of *her mortgage* to the Brices. This is stated, not by way of recital of matter extraneous and not essential to validity of the deed, but as the *only consideration* upon which it was executed, and without it

the instrument would not *be a deed.* It must be remembered that Mrs. Holliday is not asking the *specific performance* of this contract, in which case the *onus* would be upon her to prove it, but she stands *upon the deed* which is the *execution* of the contract. There is no proof contradicting this consideration. What then is the law in such a case? Why, the deed itself is *prima facie* evidence of *the consideration* upon which it was executed, and, if not contradicted, is conclusive. 2 *Md. Rep.*, 365, *Faringer vs. Ramsay.* 3 *Md. Rep.*, 212, *Glenn vs. Grover.* 2 *Md. Ch. Dec.*, 226, *Glenn vs. Randall.* 3 *Do.*, 171, *Anderson vs. Tydings. Ibid.*, 468, *Young's Estate.* The authorities and reasoning of the opinion of the court below are conclusive upon this point.

4th. Assuming then that the consideration stated in the deed to *be true*, the next inquiry is, is this a *valuable consideration?* and this depends upon whether Mrs. Holliday had such an interest in the mortgage which she united in assigning to the Brices, as to enable her to make the contract set out in the deed. Upon the determination of this question the case depends. What then was this mortgage, and what interest had she in it? It was a mortgage executed to her in fee before her marriage, in her maiden name, of her entire maiden real estate which she had sold to Duvall. Now we say, that in this mortgage she had either, 1st, a right of survivorship, of which she could not be deprived except by her own voluntary act, and which she could assert as against the assignee of her husband for value; or 2nd, that this mortgage was an *equitable chose in action,* which neither the husband nor his assignee could reduce into possession without the aid of a court of equity, in which case she would be entitled to an equitable provision therefrom. If she had either or both these rights, it was a *valuable right* to her, which she could part with by *contract*, in the same mode as any other party can part with any portion of his property, and it formed a *valuable consideration* for the contract stated in the deed. That she had such an interest is, we think, unquestionably established by the decisions of this court, in 4 *G. & J.*, 291, *Farmers Bank vs. Duvall*, and 3 *Md. Rep.*, 1, *Wiles vs. Wiles;* and by all the

elementary writers and decisions elsewhere. 2 *Kent's Com.*, 137. 2 *Spence's Eq.*, 475, 476. 32 *Law Lib.*, 142, *Roper on Husband & Wife*. It cannot be doubted that in this State a court of equity has jurisdiction over the *subject of mortgages*, and that where the wife is mortgagee, the legal title being in her, she must join in a bill of foreclosure. And *wherever* equity has jurisdiction over the *subject matter*, the right of the wife to an equitable provision attaches.

5th. As to *fraud in fact :* There is not a particle of proof of it in the case, and not even an allegation of fraud as against Mrs. Holliday. We dismiss, therefore, this question upon what is said in the opinion of the court below. But it is urged, that as the deed was executed in 1852, and states, as its consideration, a contract made in 1847, it cannot have relation back to the time of that contract, to the prejudice of *intervening rights* of third parties. If by *intervening rights* are meant *judgments* or *other liens* on the property, as was the case in *Clabaugh vs. Byerly*, 7 *Gill*, 354, we *admit* the proposition, but if the rights of *intervening simple contract creditors only* are meant, we deny it; for if such be the law, then a debtor cannot make a deed to secure a debt contracted a *year since,* provided he has contracted *other debts* in the meantime. We say this deed is operative from *its date;* that by virtue of the assignment of her mortgage, and the agreement then made, Mrs Holliday became a creditor of her husband, and that he had the same right to prefer *her* that he had to prefer any one of these complainant creditors to another.

6th. But it is said, the deed is void because it conveys *personalty* as well as real estate, and has not the affidavit required for a bill of sale, and being thus void as *to part*, it is void *in toto;* and the case of *Albert & Wife, vs. Winn & Ross*, 7 *Gill*, 481, 482, and the authorities there cited, are supposed to establish this proposition. To this we reply:—1st, that the cases referred to are cases of assignments in favor of creditors, in which some of the *purposes* to which the property is dedicated by the deed are *valid* and others *void*, and the courts say they will not cull out those purposes which the law sanctions and sustain the deed *as to them*, and *avoid* it as to the others, but

that it must stand or fall as *a whole,* and they have no application to a case where a deed devotes property to a *legitimate purpose,* and is defectively *executed* as to a *portion* of the *property contained in it,* and properly executed as to the rest. Upon this theory a deed conveying real estate to the value of $100,000, would be *void* if it attempted to convey a *horse* to the value of $10, unless it had the affidavit. 2nd, that the acts of Assembly referred to, have no application whatever to the case of a pure and simple *deed of trust* like this, whether the property conveyed be realty or *personalty.* 3 *Md. Rep.,* 82, *Charles vs. Clagett.*

7th. As to the question of *interest* upon the claim of Mrs. Holliday. It is a conclusive answer to this point to say, that if our positions are correct, the deed conveys the *whole property* to the trustee, and it matters not whether it exceeds or falls short of the consideration upon which the deed was executed.

MASON, J., delivered the opinion of this court.

The case of *Bowie vs. Stonestreet,* 6 *Md. Rep.,* 418, conclusively settles that a contract, which can be enforced in a court of equity, may be entered into between a husband and wife, for the transfer of property from the former to the latter, for a *bona fide* and valuable consideration.

The interest which Mrs. Holliday had in the mortgage, whether as respects her right of survivorship, or her equitable claim to be allowed a separate provision for her maintenance, was sufficient to form the basis or consideration for a contract with her husband, like that set out in the deed of trust, and which is alleged to have constituted the consideration therefor.

This being true, the next question which arises is, whether the consideration set out in the deed of trust from Holliday, for the benefit of his wife, is to be regarded as *prima facie* true, until contradicted by proof offered by the party who assails the deed? We think our own authorities have settled this question affirmatively. The cases of *Faringer vs. Ramsay,* 2 *Md. Rep.,* 375, and *Glenn vs. Grover,* 3 *Md. Rep.,* 212, clearly establish, that deeds themselves are *prima facie* proof of what the consideration was upon which they were

executed. Inasmuch, therefore, as no evidence was offered by the complainants assailing the verity of the consideration set out in the deed of trust, whether by direct and independent proof, or by resorting to the answers of the defendants, which the complainants could have required them to have made under oath, the deed must be sustained.

While I may not like the law which sanctions such transactions, I feel nevertheless bound to acknowledge its binding force upon this court.

We do not concur with the appellants' counsel, that this deed is void as to creditors, because of the absence of the affidavit as required by the act of 1846, ch. 271, and its supplements, which relate to bills of sale and mortgages. It is said by the appellants, that inasmuch as the deed in this case embraced both real and personal property, it is void *in toto*. Without determining in this case its effect so far as the personalty is involved, we think the deed is sufficient to convey the realty.

We concur, too, with the court below, that this deed is not a mortgage, but a deed of trust, and therefore need not be sworn to.

The purpose and effect of the deed being to convey the *whole* estate to the trustee, subject only to the subsisting liens upon it, the entire proceeds of the property, after satisfying liens, whether they be more or less than Mrs. Holliday's original mortgage, vest in him, in trust for her benefit. The question, therefore, of interest, as presented by the auditor's report, becomes a matter of no moment. As the effect of the decree below is to produce this result, we affirm it.

Without deeming it necessary to affirm all the legal propositions contained in the able and elaborate opinion delivered by the learned judge in the court below, we think, nevertheless, that that opinion, in the main, is founded upon sound, legal principles.

*Decree affirmed with costs.*