(Decided 15th May, 1885.)

GROVER AND BAKER SEWING MACHINE COMPANY *vs.* WILLIAM P. RADCLIFF, Garnishee of JAMES and JOHN BENGE.

*Husband and Wife—Separate estate of Wife—Relation of Debtor and Creditor between Husband and Wife—Consideration recited in Deed from Husband to Wife—Voluntary conveyance—Prima facie Evidence of Fraud in·respect of Prior creditors of Grantor—How presumption of Fraud may be Repelled.*

A wife may become a creditor of her husband, in respect of money or property belonging to her as her separate estate, which the husband has *received under an express promise* at the time of repaying her. But if such money or other separate property has been received by the husband, with the knowledge and acquiescence of the wife, without such express promise *at the time,* no implied assumpsit, either legal or equitable, will arise to support a claim against the husband or his estate.

While the consideration recited or set forth in a deed from a husband to his wife, or from a husband for the benefit of his wife, like the consideration recited in deeds between other parties, is to be taken as *prima facie* true as stated, yet to constitute a valuable consideration as against subsisting creditors, the consideration thus recited, if relied on, must be such as will evidence an obligation on the part of the husband that the wife could have enforced against him or his estate.

The consideration in a deed from B. to S. for the benefit of the wife of the grantor, was stated to be $4000 that the grantor had *thereto-*

*fore received* from his wife, "the same being money and the proceeds of the sale of property belonging to her in her own right," and which he was desirous of securing to her. There was no statement or recital of the fact that the money, so obtained by the husband, was obtained upon any promise made by him at the time that it should be repaid or secured to the wife. HELD:

1st. That without such promise made, upon which the money was obtained, the relation of debtor and creditor was not created between the husband and wife; and consequently the recitals did not show such valuable consideration for the conveyance as would support it as against the then subsisting creditors of the husband.

2nd. That as a voluntary conveyance or settlement, it was *prima facie*, though not conclusive, evidence of a fraudulent purpose with respect to prior creditors of the husband; which *prima facie* presumption, however, resulting from the voluntary character of the deed and the fact of the existence of unsatisfied creditors of the grantor, might be repelled and the deed maintained, by showing that the grantor was, at the date of the deed, in prosperous circumstances, possessed of ample means to discharge all his pecuniary obligations, and that the settlement was, at the time it was made, in other respects reasonable and proper, and without the taint of fraud in fact.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court. The verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, and BRYAN, J.

*Albert Constable*, for the appellant.

*James T. McCullough*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This is an attachment on warrant against non-resident defendants, founded on a judgment rendered in the Court of Common Pleas for the County of Chester, in the State

of Pennsylvania, for $3000. The attachment was laid upon two parcels of land, and the parties in possession were returned as garnishees. One of the parties thus returned, Radcliff, appeared and filed several pleas in behalf of the defendants in the attachment; the first of which was, that there was no record of the recovery of the judgment sued on; second, that the Court in which the judgment was rendered had no jurisdiction of the defendants named therein; third, that the judgment sued on was obtained by fraud. How these several pleas were disposed of in the Court below, the very meagre and imperfect record before us does not disclose. Suffice it to say, however, that no question on these pleas is before this Court on this appeal, nor is there any question raised, either by plea or motion, as to the nature or effect of the judgment sued on. There was a fourth plea interposed by the garnishee, to the effect that the parcels of land mentioned in the sheriff's return, as having been seized as the property of the defendants in the attachment, were not the property of such defendants, or either of them, and that they had no right, title or estate therein, at the time the attachment was issued. It was upon this plea alone, according to the bill of exception, that the trial was had in the Court below, and that trial, under an instruction of the Court, resulted in a verdict and judgment for the defendant, the garnishee.

The judgment sued on was rendered on the 3d of January, 1874, against James Benge and John Benge, on a bond to the plaintiff in the penalty of $3000, dated the 16th of March, 1872, with collateral condition, that James Benge should well and truly account to and secure the plaintiff, in respect to all credit and dealings between them, therein specified. The bond contained a power of attorney for the confession of a judgment thereon, for the full sum mentioned in the bond; and it was by virtue of this power, according to the recitals, that the judgment was entered.

It appears that execution was issued upon this judgment in Pennsylvania, but it does not distinctly appear how much money was realized on the execution.

It appears that, at the date of the bond, and also of the judgment thereon, John Benge owned and possessed the two parcels of land seized by the sheriff under the attachment. But subsequently, that is to say, on the 26th of June, 1874, John Benge conveyed these parcels of land to Thomas W. Strahorn, for the recited consideration of $4000, which he, *at sundry times theretofore,* had "received from his wife, Mary A. Benge, the same being money and the proceeds of the sale of property belonging to her in her own right," and, according to the recital, he was "desirous of securing the same to his said wife." The deed then, in consideration of the recited premises, and of the sum of five dollars, conveyed the parcels of land to the grantee in fee simple, "for the use and benefit of the said Mary A. Benge, and with full power and authority to convey the same directly to her the said Mary A. Benge, her heirs and assigns, forever." In pursuance of this power, Strahorn, the grantee, on the 30th of June, 1874, conveyed the property directly to Mrs. Benge, and, in the deed, the previous deed from John Benge is referred to and the objects of it recited. Afterwards, that is to say, on the 5th of July, 1881, John Benge and wife, by their joint deed, conveyed one parcel of the property embraced in the deed to Mrs. Benge, to Ellen Barber, a daughter of the grantors, in consideration of natural love and affection, and of five dollars; and on the 1st of Sept., 1881, the same grantors conveyed another part of the land conveyed to Mrs. Benge, to another daughter, Ann M. Radcliff, wife of William Radcliff, the garnishee, for the recited consideration of $5000, and the assumption of a mortgage of $800. According to the bill of exception, there was no other evidence offered, and these several con-

veyances were simply allowed to speak for themselves, and the case was made to depend exclusively upon their legal effect.

The plaintiff offered several propositions for instruction, as to the effect of these deeds, but most if not all of them were in an abstract form, and therefore objectionable. All the propositions offered by the plaintiff were rejected, and the Court, at the instance of the defendant garnishee, Radcliff, instructed the jury, "that the consideration expressed in the deed from John Benge to Thomas Strahorn, and from Strahorn to Mary A. Benge (if the jury believe said deeds were executed), is a good and valuable consideration, and that the deeds themselves are *prima facie* proof that the consideration therein expressed is true and *bona fide*; and if the jury find that the consideration in said deeds was true and *bona fide*, they must find for the defendant; and the Court further instructs the jury, that there is no evidence in this case that the consideration was not true as expressed in said deeds, and that said deeds were not executed in good faith." It was to the granting of this instruction, and the refusal of the Court to grant the prayers of the plaintiff *generally*, that the exception was taken.

This Court is of opinion that the instruction granted is clearly erroneous. It has long since been the settled law of this State, that the wife may become a creditor of the husband, in respect of money or property belonging to her as her separate estate, which the husband has *received under an express promise at the time of repaying to her*. But if such money or other separate property of the wife has been received by the husband, with the knowledge and acquiescence of the wife, without such express promise *at the time*, no implied assumpsit, either legal or equitable, will arise to support a claim against the husband or his estate. The wife having the *jus disponendi* of her separate property, if she thinks proper to let her husband have

it, or appropriate it, without any express promise or agreement at the time to account for or repay her the amount so received or appropriated, she cannot afterwards set up a claim against the husband upon the footing of a creditor. In such case she is taken to have acquiesced in the appropriation of the fund for the common benefit of herself and husband, or for the benefit of the family. *Edelen vs. Edelen,* 11 *Md.,* 415, 420; *Hill vs. Hill,* 38 *Md.,* 183, 185; *Kuhn vs. Stansfield,* 28 *Md.,* 210. And though the consideration recited or set forth in a deed from the husband to his wife, or from the husband for the benefit of the wife, like the consideration recited in deeds between other parties, is to be taken as *prima facie* true as stated, yet to constitute a valuable consideration as against subsisting creditors, the consideration thus recited, if relied on, must be such as will evidence an obligation on the part of the husband that the wife could have enforced against him or his estate. Otherwise it could not be regarded as a valuable consideration. And this principle has pervaded all the cases in this Court, where deeds from husband to wife, or from the husband for the benefit of the wife, have been sustained upon the *prima facie* effect of the consideration recited in the deeds assailed. *Stockett vs. Hollyday and Wife,* 9 *Md.,* 480, 486; *Horsey's Adm. vs. Jones and Wife,* 18 *Md.,* 464; *Mayfield vs. Kilgour,* 31 *Md.,* 240, 242. While upon the other hand, where the recital of the consideration in the deed has not shown such obligation on the part of the husband to the wife, and the deed has been attempted to be sustained upon the recital alone of the fact that the husband had received money or other property belonging to the wife as her own estate, and that he was desirous of securing her for the same, and for that purpose executed the conveyance, this Court has held that such deed, as to the antecedent creditors of the husband, could not be supported as a deed founded upon a valuable consideration. *Kuhn vs. Stansfield,* 28 *Md.,* 210, 215.

Here, in the deed from Benge to Strahorn for the bene-
fit of the wife of the grantor, the consideration is stated
to be $4000 that the grantor had *theretofore received* from
his wife, "the same being money and the proceeds of
the sale of property belonging to her in her own right,"
and which he was desirous of securing to her. There is
no statement or recital of the material fact that the
money, so obtained by the husband, was obtained upon
any promise made by him at the time that it should be
repaid or secured to the wife; and without such promise
made, upon which the money was obtained, the relation
of debtor and creditor was not created between the hus-
band and wife; and consequently the recitals do not
show such valuable consideration for the conveyance as
will support it as against the then subsisting creditors of
the husband. For if we allow to the recitals in the deed
their fullest import, they show nothing more than a
motive, commendable enough when not in prejudice of the
rights of creditors, for making a voluntary settlement
upon the wife. And as a voluntary conveyance or settle-
ment, it is *prima facie*, though not conclusive, evidence of
a fraudulent purpose with respect to prior creditors of the
husband. This *prima facie* presumption, however, result-
ing from the voluntary character of the deed and the fact
of the existence of unsatisfied creditors of the grantor,
may be' repelled and the deed maintained, by showing
that the grantor was, at the date of the deed, in prosper-
ous circumstances, possessed of ample means to discharge
all his pecuniary obligations, and that the settlement was,
at the time it was made, in other respects reasonable and
proper, and without the taint of fraud in fact. This is
the prevailing doctrine in this country in respect to such
deeds, and it has been repeatedly asserted and applied, to
its fullest extent, by the Courts of this State. *Worthing-
ington & Anderson vs. Shipley,* 5 *Gill,* 449; *Baxter &
Wife vs. Sewell,* 3 *Md.,* 334, and same case 2 *Md. Ch. Dec.,*

447; *Worthington vs. Bullett*, 6 *Md.*, 172, and *same case* 3 *Md. Ch. Dec.*, 99; *Warner vs. Dove & Wife*, 33 *Md.*, 586. In this case there is no evidence whatever to show the circumstances of the grantor Benge, either at the date of the deed or at any subsequent time. For aught that appears he may have been utterly insolvent at the time the deed was made to Strahorn for the benefit of Mrs. Benge; and in such state of case, the deed, by legal presumption, is condemned as invalid.

It therefore follows that the instruction given by the Court below, at the instance of the defendant, was erroneous; but because of the defective form in which the propositions on the part of the plaintiff were offered, there was no error committed in rejecting them, as they might have misled the jury.

*Judgment reversed, and<br>new trial awarded.*

(Decided 15th May, 1885.)