SOLOMON LEVI, and HENNIE LEVI, his wife *vs.* EMMANUEL ROTHSCHILD and others.

*Husband and Wife—Conveyance to Wife of Insolvent debtor—Purchase money—Burden of Proof—Presumption—Relation of Debtor and Creditor as between Husband and Wife.*

Where a conveyance to the wife of an insolvent debtor is assailed, as being in fraud of her husband's creditors, the burden of proof is upon her to show that the property was purchased with her money; and in the absence of such proof, the presumption is that the husband furnished the means of payment.

To create the relation of debtor and creditor as between husband and wife, in respect of money loaned by her to him, mere expectation on her part that he will repay it, is not sufficient; there must be an express promise by him at the time the money is loaned, to return it.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree setting aside a conveyance to a married woman and directing the property to be sold, on a bill filed by creditors of her husband. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*M. Star Weil,* and *Robert D. Morrison,* for the appellants.

*Fielder C. Slingluff,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

This is a bill by the creditors of the husband to set aside a deed of a house to his wife, and which on its face shows she was the purchaser, on the ground that the money applied to the payment of the house was in fact the husband's money, and that the deed was made to her in fraud of his creditors.

It can hardly be necessary to say, that where a conveyance is made to the wife of an insolvent debtor, the *burden of proof* is upon the wife to show that the property was purchased and paid for out of money belonging to her; and that in the absence of such proof, the presumption is that the husband furnished the means of payment. *Seitz vs. Mitchell,* 94 *U. S.,* 580; *Hinkle vs. Wilson,* 53 *Md.,* 287.

It is admitted that $1800 of the $2600, applied in payment of the house, was received by the wife from her husband a short time before his failure in business, with full knowledge on her part that he was in failing circumstances.

Now what is the proof in support of the *bona fides* of this transaction? The husband, Levi, says, he was mar-

ried in 1876 in Baltimore, and shortly afterwards went to Clarksburg, Virginia, and while doing business there, his wife loaned him $2000 which she had received as a marriage gift from her father, and which he promised to repay as soon he could;—that after being in business about a year he sold out his stores to Nusbaum & Taylor, taking their promissory notes for between six and seven thousand dollars in payment, and these notes on his returning to Baltimore he assigned to his father-in-law Heiman, expecting at the time to go into partnership with him, but being unable to agree upon terms with his father-in-law, he removed to Ottumwa, Iowa, taking with him merchandise of the value of seven thousand dollars, bought of his father-in-law in payment of the Nusbaum & Taylor notes—that after being in business there about four years, he was obliged to make an assignment for the benefit of his creditors, the preferred creditor being Heiman, his father-in-law, and to whom the assignee afterwards paid the entire assets, amounting to nearly nine thousand dollars— that some months before his failure he paid to his wife different sums of money amounting altogether to $1800, on account of the $2000 loaned to him in Clarksburg,— this money she kept in her bureau till they removed to Baltimore, and afterwards used it in the payment of the house in question.

Unfortunately, however, for all this, the wife tells quite a different story, and one utterly inconsistent with her husband's testimony. According to her account, she had her father's marriage gift of $2000 in her possession before they went to Ottumwa, and took the money with her to Ottumwa in a *tin box in the cars*, and kept it after she got there, about two years, when she loaned it to her husband, and afterwards finding he was troubled in business, she asked him to pay her back, and some months before he failed, he paid her

$1800, which she kept in her bureau until they returned to Baltimore.

On being reminded that her husband had testified she loaned him the money in Clarksburg, she had forgotten, she said, about the Virginia store. And then again upon further examination she testified she loaned him the money in *Baltimore in* 1876, soon after her marriage, and that she was mistaken in saying she took the money with her to Ottumwa, she meant she took it from Ottumwa to Baltimore in a tin box which she put in her trunk. And on being asked what her husband said to her, and what she said to him, when she loaned the money, her answer was "I don't remember." And being pressed further with the question, she replied, "he didn't say any thing, but I expected him to pay me back." Mere expectation that her husband would pay her back, is not sufficient to create the relation of debtor and creditor as between husband and wife. There must be an express promise on his part at the time the money is loaned by the wife, to repay it. And the husband in reply to the question as to how much he owed Heiman, his father-in-law, when he failed in Ottumwa, said "I don't remember."

132 Question. "Did you owe him $10,000?

Ans. "I don't remember.

133 Ques. "Did you owe him $5000?

Ans. "I can't tell.

134 Ques. "Did you owe him $1000?

Ans. "I have answered already."

And yet his father-in-law was the preferred creditor, and received from the assignee under the assignment for the benefit of his creditors, nearly $9000.

But it is altogether unnecessary to take upon ourselves the disagreeable task of exposing in detail, the many conflicting and contradictory statements made by the husband and the wife in regard to the loan of this

money. It is sufficient to say, we fully agree with the Court below, that the wife has failed to prove that the house was purchased and paid for out of money belonging to her. And further conceding she had $2000, and that she let her husband have it, the proofs fails to show that he promised at the time he got it, to pay it back. So we must affirm the decree.

*Decree affirmed.*

(Decided 14th June, 1888.)