## SARAH M. STOCKSLAGER, By Her Committee, *vs.* MECHANICS' LOAN AND SAVINGS INSTITUTE.

*Fraudulent Conveyances—Deed from Husband to Wife—Proof of Consideration—Rights of Creditors.*

When property is conveyed by a husband to his wife, and the conveyance is assailed by the then existing creditors of the husband as being in fraud of their rights, the burden of proof is upon the wife to show that the deed was made upon a valuable consideration.

The consideration stated in a deed from husband to wife is to be taken as *prima facie* true, but to constitute a valuable consideration as against subsisting creditors of the husband, the consideration thus recited must be such as will evidence an obligation on the part of the husband enforceable against him. In this case the deed from husband to wife recited that in consideration of a certain sum "heretofore received" by the husband from his wife and in payment of the debt "thereby created" the deed was made. *Held*, that the consideration thus set forth was insufficient because, unless the husband promised to repay the money when it was received by him, with her consent, there was no legal obligation on his part to do so, and since there was no evidence *aliunde* to show that the husband was ever indebted to his wife, the deed was void as to his existing creditors.

Appeal from a decree of the Circuit Court for Washington County (STAKE, J.), vacating and setting aside a deed from W. E. Stockslager to Sarah M. Stockslager, his wife.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Feb. 8, 1898).

*J. Augustine Mason* for the appellant.

*Norman B. Scott, Jr.*, for the appellee.

BOYD, J., delivered the opinion of the Court.

The object of the bill of complaint which was the beginning of the proceeding before us for review was to set aside a deed executed by William E. Stockslager to his wife,

Sarah M. Stockslager, conveying a house and lot in Hagerstown, and to subject the property to the payment of the debt due the appellee by him. The indebtedness commenced in 1890 and 1891 on several notes of the firm of J. C. Dayhoff and Company, of which Mr. Stockslager was a member, which were renewed from time to time until December, 13th, 1893, when there was a balance due on one note signed by the firm, William E. Stockslager and J. W. Stonebraker, and on December 27, 1893, other notes were consolidated into one of twenty-two hundred dollars, which was given by the firm with Mr. Stockslager and the other two members as sureties. On May 14, 1894, judgments were entered for the balances due on these respective notes against the firm and the individual sureties, including Mr. Stockslager. The firm of J. C. Dayhoff & Co. became embarrassed and receivers were appointed on April 7th, 1894. Some payments were made by the receivers, and the trustees of one of the firm who was insolvent on the judgments, but there is considerable balance still due on them. Unfortunately William E. Stockslager died in May, 1894, and in December of that year his widow was placed in an insane asylum, where she is still confined, and the case on her part was defended by her committee, who was thus deprived of the benefit of the testimony of both parties to the deed, which is alleged to be fraudulent as against the creditors of the husband. The consideration stated in the deed is "the sum of twenty-one hundred dollars heretofore received by him, the said William E., from his wife, Sarah M. Stockslager, and in payment and extinguishment of the debt from the said William E. to the said wife thereby created," and the property was conveyed subject to mortgages amounting to two thousand dollars. It was the only real estate owned by him and was worth about forty-one hundred dollars—the consideration named in the deed, including the mortgage debt. The deed was placed on record on the 30th day of December, 1893—just three days after the twenty-two hundred dollar note was given, although it

had been executed on November 14th of that year. The testimony also shows that the firm was insolvent and was being sued in 1893, principally in November. After Mr. Stockslager conveyed to his wife the only real estate he had, he apparently had nothing and his administrator returned no assets to the Orphans' Court.

This Court has held in a number of cases that a wife may become a creditor of her husband and it was said in *Crane* v. *Barkdoll*, 59 Md. 534, that " if she is, in fact, such creditor, the law regards her rights with as much favor as those of other creditors." But there must be proof of the clearest and most satisfactory character of the existence of the relation of debtor and creditor between them when a husband undertakes to prefer his wife to the exclusion of others. It may be worthy of consideration whether there ought not to be a statute requiring any indebtedness from a husband to his wife to be made a matter of record, within some reasonable time after it is created, in order to affect creditors, as there is no greater opportunity for fraud or easier means of imposing on third persons than permitting husband and wife to secretly occupy and continue the relation of debtor and creditor, and then when the former has become financially embarrassed to permit him to prefer his wife and thus possibly provide a home or support for himself, as well as his wife and family. But even under the law as it now exists, when the *bona fides* of the transfer is questioned by a creditor of a husband the burden is on the wife. *Hinkle* v. *Wilson*, 53 Md. 287 ; *Levi* v. *Rothschild*, 69 Md. 348 ; *Nicholson* v. *Condon*, 71 Md. 260. As the Supreme Court of the United States said in *Seitz* v. *Mitchell*, 94 U. S. 580, which has been quoted with approval by this Court in the above cases, and more recently in *Manning* v. *Carruthers*, 83 Md. 1, " Such is the community of interest between husband and wife ; such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold

forth such temptations for fraud that they require close scrutiny. In a contest between the creditors of the husband and the wife, there is, and there should be a presumption against her which she must overcome by affirmative proof."

Let us apply those principles to this case.  The recital in the deed does not show how or when the debt therein referred to was created.  The appellant has attempted to account for it by the introduction of certain notes signed by William E. Stockslager, payable to his wife, and of a number of checks of Mrs. Stockslager's on the Mechanics' Loan and Savings Institute, payable to the order of her husband and endorsed by him.  It was also shown that she kept an account in her name with the appellee, beginning with July 21, 1884, the deposits being made quite regularly until August 29, 1887.  There was then an interval until July 25, 1891, when she again opened an account which was continued until 1894.  Where the money, which was deposited from time to time came from, is not shown with any certainty.  It is claimed that she kept boarders and in that way saved it.  Matthias E. Kayhoe, her brother, testified that his sister was married in the winter of 1883–84, and that he lived with her until May, 1887, when he went to Washington—paying board that averaged about $2.50 per week, and that during that time she had three other boarders, but had none for about two years after he left.  As she drew the balance of her account on August 29, 1887, by check to G. R. Bowman, which we will refer to directly, any money she may have earned prior to that time is not very material.  It is true that during those three years she gave checks to her husband amounting to two hundred and four dollars and fifty cents, but it is not shown what they were for and it may be they were to reimburse him for expenses in keeping the boarders, as the testimony shows that he bought groceries and other articles for the house. After the death of William E. Stockslager, Mr. Kayhoe saw Mrs. Stockslager have the checks and notes, which were offered in evidence, in her possession.  There are twenty-three

checks, all signed by her excepting one or two which were signed by her husband in her name, and all were endorsed by him, excepting the G. R. Bowman check.   There are five notes, all signed by him.   The first is for $784.50, and is dated November 19, 1884—about a year after their marriage—payable ninety days after date.   The record is absolutely silent as to what that was given for.   It is not shown that she had any money when she was married or afterwards received any, excepting from the board we have spoken of. The next note is for $40.00, is dated October 2, 1891, and payable ten days after date.   On that date she gave him a check for forty dollars.   On December 4, 1891, another note was given for $27.00, payable ninety days after date. There are two checks for nine dollars and eighteen dollars, respectively, dated November 7th and December 1, 1891, which may have been covered by that note.   January 10, 1893, is the date of the next note, which is for three hundred dollars, payable ninety days after date.   On that day he withdrew from her account one hundred dollars and had withdrawn on June 11, 1892, one hundred and twenty-five dollars ; on August 9th, thirty dollars, and September 2nd, fifty dollars.   There is nothing to show whether these last three items were intended to be included, but it is contended on the part of the appellant that such was probably the case. The last note is dated November 13, 1893, and is for ten dollars, payable sixty days after date.  It would seem reasonable to assume that the notes of October 2, 1891, December 4, 1891, November 13, 1893, and that of January 10, 1893, to the extent at least of one hundred dollars, were given for sums drawn out of the bank account, as the dates correspond, but there is nothing to show in whose possession they were when Mr. Stockslager died, or whether they had not been in point of fact paid.   The only evidence on the question is that of Mr. Kayhoe, who saw them in his sister's possession sometime after her husband's death.   Nor does the evidence connect them with the consideration mentioned in the deed.   There is a very striking circum-

stance shown by the account of Mrs. Stockslager with the appellee, suggesting that her husband or some one was paying her money in sums of some size. During the first year after she opened the account for the second time, July 25, 1891, she deposited $278.25, during the second $148.25 and during the third from August 5, 1893, to May 26, 1894, $700.00—there having been deposited two amounts for $145.00 and $279.00, respectively, on the last mentioned date. It is true she had three boarders besides her mother for a year before her husband's death, but it was during the time that he was so embarrassed when it can be fairly assumed that he could not furnish supplies for the house as readily as he could when he was more prosperous. The money he had belonging to his wife's father's estate in trust for her mother during her life, to use the language of the witness Kayhoe, " is gone and has not been accounted for as yet to the present administrator. The present administrator is engaged in efforts to secure the said money." This witness also said he did not know whether his mother paid her board in money or was only credited with the amount of it. If the money was " gone " the latter was more likely the case. But at any rate it was not probable, if possible, that she could have cleared from three or four boarders, seven hundred dollars in less than ten months, and still less so that she could have had from that source fourh undred and thirty-four dollars to deposit in one day. Where did it come from ? The record is silent. The fact is at least suspicious and suggestive.

As to the Bowman check for five hundred and thirty dollars, dated August 27, 1887, there is absolutely no evidence to show that it was given under such circumstances as would permit it to be charged against Mr. Stockslager. If the appellant's theory be correct that she took notes to represent what he owed her, it is singular that an indebtedness for a sum of that size should not have been evidenced by a note, but there is no evidence that he ever promised to repay her that sum. The law of this State is settled beyond

all controversy on that point.   In *Grover and Baker Co.* v. *Radcliff*, 63 Md. 496, the former decisions of this Court were referred to and the doctrine was reiterated that if a husband receives his wife's money or other separate property, with her knowledge and acquiescence, without an express promise *at the time* to repay it, no implied assumpsit, either legal or equitable, will arise to support a claim against him or his estate.   ALVEY, C. J., in delivering the opinion of the Court said, "the wife having the *jus disponendi* of her separate property, if she thinks proper to let her husband have it, or appropriate it, without any express promise or agreement at the time to account for or repay her the amount so received or appropriated, she cannot afterwards set up a claim against the husband upon the footing of a creditor.   In such case she is taken to have acquiesced in the appropriation of the fund for the common benefit of herself and husband, or for the benefit of her family."

We have said above that the burden is on the wife to establish the fact that she was a *bona fide* creditor of her husband.   In doing so we have not overlooked the cases in this State which hold that the consideration stated in a deed from the husband to his wife is to be taken as *prima facie* true, as is the case in deeds between other parties. *Stockett* v. *Hollyday*, 9 Md. 480 ; *Mayfield* v. *Kilgore*, 31 Md. 240 ; *Grover and Baker Co.* v. *Radcliff, supra*, but as was held in the last mentioned case, "to constitute a valuable consideration as against subsisting creditors the consideration thus recited, if relied on, must be such as will evidence an obligation on the part of the husband that the wife could have enforced against him or his estate.   Otherwise it could not be regarded as a valuable consideration." The recital in this deed that in consideration of the sum of twenty-one hundred dollars "heretofore received," by the husband from his wife and in payment and extinguishment of the debt "thereby created," is not sufficient to make a *prima facie* case as against creditors.   It should have shown that there was a promise to repay the money when it was

received and that there was such a debt as could be enforced against him.   The recital of the consideration in this deed is very similar to that in 63 Md. 496, *supra*, where it was held to be insufficient.

There is then nothing in the evidence offered that approaches the requirement of the law to enable the wife to successfully assert a claim against her husband, to the detriment of subsisting creditors, excepting perhaps the notes for forty dollars, twenty-seven dollars, ten dollars and one hundred dollars of the note of January 10, 1893.   But there is nothing to connect either of the notes or the Bowman check with the pretended consideration mentioned in the deed, or to show that they were still subsisting unpaid obligations when the deed was executed.   We regret that the death of the husband and the affliction of the wife prevents us from having their explanation of the transaction, but, although greatly deploring her unfortunate condition, we cannot deviate from these well-settled principles of law, which are so necessary for the protection of the creditors of those in failing circumstances, because of a mere possibility that she may have helped her cause had not her reason been dethroned.   There are suspicious circumstances shown by the record which we might have commented on more fully had not the death of one and that which is worse than death to the other of the two parties to the deed made it impossible for them to explain, if susceptible of explanation, and we therefore forbear to say more on that subject.

As we have already said that we are not satisfied that there was any *bona fide* debt, such as the law recognizes, existing when the deed was made, it is of course unnecessary to discuss the other suggestion of the appellant that a lien be declared in her favor, if the deed be set aside.   The decree must be affirmed.

*Decree affirmed with costs.*

(Decided March 3rd, 1898).