Strauss, *et al. vs.* Rose.

(Decided 8th March, 1883.)

Judge MILLER dissented on the appeal of Mrs. Cutting and Mrs. Burden.

---

MOSES STRAUSS and others, trading as STRAUSS BROTHERS *vs.* JACOB ROSE, Trustee, Claimant of property, &c.

*Debtor and creditor—Assignment for the benefit of creditors— Fraud—Burden of proof—Evidence of the Fraudulent character of the Assignment—Insolvency of Debtor no bar to an Assignment for the benefit of Creditors—Fraud in contracting Debts, as affecting such Assignment—Act of 1864, ch. 306.*

A debtor may make an assignment of his property, and provide for the payment of one class of creditors in preference to another. All that the law requires is that the conveyance shall be made in good faith, and upon a valid consideration.

The burden of proof is upon the creditor assailing the deed, to show that though valid on its face, it is fraudulent in fact. This may be done by evidence showing that the deed was made for the purpose of concealing or covering up the debtor's property, or to force creditors to accept a compromise, or in pursuance of an agreement or understanding with the assignee, or the preferred creditors, by which the assignor is to derive some advantage or benefit inconsistent with the legal rights and remedies of creditors.

The fact that a preferred claim is stated in the deed to be a few dollars more or less than the sum actually due is not material. If

there be any question as to the precise amount, this can be determined in the audit and distribution of the fund.

The fact that the debtor is insolvent does not prevent his making an assignment of property for the benefit of creditors.

And even if he had fraudulently contracted debts under the meaning of the Act of 1864, ch. 306, this will not affect the assignment unless there was some connection between the debts thus contracted and the assignment itself.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.* At the conclusion of the evidence the plaintiffs offered the six following prayers:

1. That if the jury find from the evidence before them, that on the 29th day of April, 1879, Rachel Goldschmitt, the defendant, made and executed the deed that has been offered in evidence from Rachel Goldschmitt to Jacob Rose; that at the time said deed was executed, the said defendant was indebted to various persons in the sum of twenty-eight hundred dollars, and that among others, she was indebted to the plaintiffs in the sum stated in their affidavit; that the property covered by said deed, was worth between one thousand and thirteen hundred dollars, and that the said deed was made in bad faith, and with the intent, and for the purpose of hindering, delaying and defrauding the creditors of the said Rachel Goldschmitt, then the deed is void.

2. That if the jury find from the evidence before them, that the deed offered in evidence, and referred to in the first prayer of the plaintiffs, was a part of a fraudulent scheme, and device on the part of Rachel Goldschmitt, the defendant, to cheat the plaintiffs, and all her other creditors, save those preferred in the deed, that the said deed was made in bad faith, and for the purpose of hindering, delaying and defrauding her creditors of their just and lawful actions and debts, then the deed is void.

Strauss, *et al. vs.* Rose.

3. That if the jury find from the evidence before them, that the defendant colluded and conspired with one Jacob Rose, for the purpose of hindering, delaying and defrauding her creditors, and that for that purpose, and with that intent, she made and executed to said Rose the deed that has been offered in evidence, that the property covered by said deed was more than sufficient to pay the preferred debts, and that the said defendant, together with the said Rose, upon the very morning after the deed was made, in execution of their previous fraudulent design and purpose, (if the jury shall find such design and purpose,) removed and concealed between four and five hundred dollars worth of said goods, for the purpose of cheating and defrauding the plaintiffs, and all the other creditors of said defendant, not preferred in the deed, and for the purpose of preventing said creditors from receiving any benefit from said goods so removed and concealed, (if the jury shall find such removal and concealment,) then the jury may take such facts into consideration in determining upon the validity of said deed.

4. That if the jury shall find from the evidence before them, the facts set forth in the first three prayers, then the mere fact that the preferred debts, mentioned in the deed, were due and owing, and were *bona fide* debts, does not preclude the plaintiffs from impeaching the validity of said deed.

5. That if the jury shall find the execution of the deed referred to in the first prayer, and that within a few weeks before said deed was made, the defendant concealed and removed from the reach of her creditors her property and money, and made other fraudulent transfers of her property during said two weeks, and until the very day that the deed was executed, then the jury may take such facts into consideration, in determining upon the validity of said deed.

6. That if the jury find from the evidence before them, that the deed from the defendant to Jacob Rose, trustee,

offered in evidence, was a mere device and contrivance, entered into by said parties for the purpose of defeating and defrauding all the creditors of the said defendant, save and except those preferred in the deed, then the deed is void.

And the defendant offered the following prayer, which was conceded:

That the plaintiffs are not entitled to maintain the attachment in this case, unless the jury shall believe that the defendant, Goldschmitt, fraudulently contracted the debt sued for, or that she fraudulently made way with her property, or was about to do so; and if the jury believe that she did not fraudulently contract said debt, and that she had not fraudulently made way with or concealed her property, and that she was not about so to make way with or conceal her property, then their verdict must be for the defendant on the issue joined in the attachment case, and so finding, they cannot find for the plaintiffs in the short note case, except for the amount actually due the plaintiffs at the time the attachment was issued, with interest thereon, as the jury may allow.

And the claimant, Jacob Rose, offered the following prayer, and special exceptions:

That the deed of trust offered in evidence contains no provision contrary to law, and does not in law tend to hinder, delay and defraud the creditors of the defendant, Goldschmitt, and if the jury find that said deed was executed and delivered, and recorded on the 29th day of April, 1879, as testified to by the witnesses, Rohr, Rose, Goldschmitt and Mr. Walter, and that Rose executed and filed in the Clerk's office of the Superior Court, the bond, of which a copy has been offered in evidence, then the plaintiffs are not entitled to recover upon the issues joined between the plaintiffs and the claimant, notwithstanding the jury may believe all the evidence offered by the plaintiffs, and their verdict must be for the claimant.

· The claimant specially excepted to the first prayer of the plaintiffs, because there was no evidence in the cause legally sufficient to prove that the deed referred to in said prayer, was made in bad faith, for the purpose of hindering and delaying creditors of the defendant; to the plaintiffs' second prayer, because there was no evidence in the cause legally sufficient to prove the facts required to be found by the said prayer; to the plaintiffs' third prayer, because there was no evidence in the cause legally sufficient to prove that there was any conspiracy or collusion between the defendant and Jacob Rose, to hinder, delay and defraud the creditors of the said defendant, or that the deed of trust was executed in pursuance of said conspiracy or collusion, or that any goods were removed by said claimant for the purpose of cheating and defrauding the plaintiffs and other creditors of the defendant not preferred in said deed; to the fourth prayer of the plaintiffs, because it assumed that there was evidence legally competent to prove the facts assumed in plaintiffs' first, second and third prayers; the claimant excepted to said prayers, because there was not evidence legally sufficient to sustain the said facts; to the sixth prayer of the plaintiffs, filed the 12th of October, because there was no evidence legally sufficient to prove the facts therein required to be found.

The Court, (BROWN J.,) rejected all of the plaintiffs prayers, and granted the prayer of the claimant.

The plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Isidor Rayner*, and *Orlando F. Bump*, for the appellants.

*M. R. Walter*, for the appellee.

Robinson, J., delivered the opinion of the Court.

Rachel Goldschmitt being embarrassed and in failing circumstances, on the 29th of April, 1879, conveyed to the appellee her stock of goods and fixtures, in trust, to sell the same and apply the proceeds, first to the payment of the expenses of the trust, then to the payment of certain preferred creditors, then to the payment of all other creditors without preference, and the balance, if any, to herself.

On May 1st following, an attachment was issued upon the affidavit of the appellants' creditors of the assignor, alleging that she had conveyed or was about to convey her property for the purpose of defrauding her creditors, (Act 1864, ch. 306,) and under this attachment the stock of goods and fixtures conveyed by Rachel Goldschmitt to the appellee were taken by the sheriff.

At the trial below the Court rejected the several prayers offered by the appellants, and instructed the jury if they should find that the deed of April 29th was regularly executed and recorded, their verdict must be for the claimant. In other words, the deed being upon its face a valid assignment, the appellants had offered no evidence from which a jury could reasonably find that it was fraudulent in fact.

A debtor, it is admitted, may make an assignment of his property, and provide for the payment of one class of creditors in preference to another. Abstractly considered, it may be more equitable to provide for the payment of all alike, but as the debtor may, by actual payment of money, prefer one creditor to another, for the same reason he may assign his property, so long as it remains unaffected by liens, in trust, to sell the same and apply the proceeds to the payment of certain debts in preference

to others. All the law requires is that the conveyance shall be made in good faith and upon a valid consideration.

As regards the conveyance now before us, it is upon its face unquestionably a valid assignment in law. It contains no provision exacting releases of creditors, nor is there a provision or reservation of any kind expressly or impliedly enuring to the benefit of the assignor. On the contrary, it is upon its face an unconditional conveyance of property in trust for the payment of creditors.

But though fair and valid on its face, it may, in fact it is said, to be a mere device or contrivance to defraud creditors. This is true. It may be made for the purpose of concealing or covering up the debtor's property, or to force creditors to accept a compromise, or in pursuance of an agreement or understanding with the assignee or the preferred creditors, by which the assignor is to derive some advantage or benefit inconsistent with the legal rights and remedies of creditors. If so, it is as much within the condemnation of the statute as if the fraud had been written on its face. The burden of proof, however, in such cases is upon the creditor assailing the assignment, and he must offer evidence from which a jury may reasonably find that though valid on its face, it is fraudulent in fact.

This case then comes down to this, was there any such evidence offered by the appellants? We think not. There is no proof that the assignment in question was made for the purpose of concealing the property of the assignor, nor any proof of a secret trust or understanding with the trustee or any one else that she was to derive any benefit from its execution as against the rights of creditors. The trustee is not even a creditor, and the proof shows that he accepted the trust at the request of Mrs. Goldschmitt, and after both Mr. Walter and Rohr had declined. He gave bond as required by law, took possession of the property

and at once had it appraised. Now a great deal was said about the removal of part of the goods from the store on the morning after the conveyance was made; but whatever suspicion may arise from this fact, his reasons for the removal are fully explained in his testimony. The goods thus removed were sold by him, and whether he acted discreetly or indiscreetly in this respect, he acted on his own responsibility and without consulting the assignor or the preferred creditors. So we find nothing either surrounding the execution of the conveyance, or in the subsequent conduct of the trustee, from which fraud could be inferred.

Besides this the proof shows the assignment was made upon a valid consideration, with the exception of Miss Laucheimer's claim of $350. No attempt is made to impeach the debts preferred by the deed; and we see no good reason to question the genuineness of her claim. She proves she loaned the money, and Mrs. Goldschmitt admits she borrowed it, and her bank-book shows she had the money in bank. Whether it was a few dollars more or less than $350 is not material. If there be any question as to the precise amount, this can be determined in the audit and distribution of the fund.

The extent to which the evidence offered by the appellants goes is to prove the insolvency of Mrs. Goldschmitt, and that she continued business and continued to buy goods, after she knew or ought to have known, that she was unable to pay for the same. But even in this aspect it is but just to say that her purchases during the twelve months prior to the assignment were far less than the preceding twelve months; and further than this, the record shows that in the four months preceding the assignment, she bought of the appellants goods to the amount of $297.60 and during the same time paid to them $260, leaving balance due of only $37.60. But this is a matter not material to this case. The fact that she was insolvent did not

Strauss, *et al. vs.* Rose.

prevent her from making an assignment of her property for the benefit of creditors. And even if she had fraudulently contracted debts within the meaning of the Act of 1864, this would not affect the assignment unless there was some connection between the debts thus contracted and the assignment itself. And of this there is not a particle of proof. On the contrary, she continued to buy and to pay as usual up to the very day, when the pressure of creditors forced her to make the conveyance. If she had fraudulently contracted debts with the appellants, they had a right to the writ of attachment under the Act of 1864, but they had no right under the writ, to take property which she, prior to the issuing of the writ, had conveyed in trust for the benefit of creditors. *Horwitz, garnishee, vs. Ellinger,* 31 *Md.,* 492.

The case of *Main & McKillip, Garnishee vs. Lynch,* 54 *Md.,* 658, so much relied on by the appellants, stands on a different ground from this case. In dealing with the plaintiff's prayers in that case, the Court say; there was evidence that the assignor, Wagoner, had been disposing of and concealing his property to defraud his creditors, and that Main, one of the assignees had aided and abetted him in furtherance of his fraudulent purpose. The question whether the assignment was fraudulent in fact, was submitted to the jury.

But in this case there is no evidence from which a jury could reasonably find a fraudulent purpose on the part of Mrs. Goldschmitt, and the assignment being valid on its face, the Court properly rejected the plaintiffs' prayers and granted the instruction offered by the claimant.

For these reasons the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 8th March, 1883.)