EDWARD LUCKEMEYER and CARL SCHEFER, trading as
LUCKEMEYER & SCHEFER *vs.* M. F. SELTZ and WM.
C. MERTZ, trading as SELTZ & MERTZ, Garnishees
of JOHN M. KEELER. SAME *vs.* FRANCIS P. STE-
VENS, Trustee, Garnishee of JOHN M. KEELER.

*Assignment for the benefit of Creditors—Trustee—Attach-
ment—Husband and Wife—Debtor and Creditor—Invalid-
ity of Assignment to Wife as in Prejudice of the Rights of
Creditors.*

On the 14th of August, 1882, K. made an assignment of all his prop-
erty to S. in trust for the benefit of all his creditors equally, and
without exacting releases. An attachment assailing the validity
of the assignment by reason of alleged fraud, was laid in the
hands of the trustee, and of S. & M. co-partners, as makers of
certain notes delivered by them to K., and as the holders of certain
personalty belonging to K. Upon the evidence introduced at the
trial by the plaintiffs, it was HELD :

1st. That the evidence was not legally sufficient to authorize a jury
to find a verdict against the validity of the deed.

2nd. That the evidence failed to show that the trustee formed any
combination with the grantor, or aided or abetted him in its per-
petration, or was cognisant of any antecedent fraud, if the grantor
in fact perpetrated any, against the rights of his creditors.

3rd. That the fact that K. before the deed of assignment was executed,
gave to the trustee a note for $200, held by K. " for attorney's fees,"
did not justify the inference that the note was given for professional
services to be thereafter rendered. If given, as it presumably was,
for fees already earned, it would be indulging in mere vague
suspicion to adopt the inference, that some portion of such fees
had been charged for legal advice in furtherance of a scheme by
which K. hoped to provide for himself and his wife at the expense
of his creditors.

4th. That if K. applied a part of the proceeds of the sale of his
stock to the support of his family and himself, it could hardly be

said that he had made a fraudulent application of it, or that he intended by thus selling his property, to benefit himself and defraud his creditors.

It appeared in the evidence that K. had called on the plaintiffs and said he would give up to them certain of the notes which he had received in payment of the stock of goods he had sold, on condition that the plaintiffs would waive their claim to notes to the amount of one thousand dollars, which he had transferred to his wife. Adding that he thought she was entitled to retain notes to that amount because she had mortgaged her house to the extent of two thousand dollars to keep him in business, and had paid him the money. HELD:

1st. That K. may have been mistaken as to his legal obligation to repay his wife this money, or in supposing that the relation of debtor and creditor had been created between them, but the facts as stated by him, clearly removed all ground for imputing to him moral turpitude or wilful fraud in thus treating his wife as his creditor, and in refunding a part of the money he had received from her property.

2nd. That assuming that the notes transferred to the wife were fraudulently transferred to her, or that she was not a *bona fide* holder of them *for value*, they did not pass to the trustee under the deed.

3rd. That the plaintiffs, as creditors of K. who transferred the notes to his wife, had the right to have the question whether she was a *bona fide* holder for value or not, litigated and settled; and this could be done under the attachment laid in the hands of the makers of the notes, the proof showing that they had not paid them, but on the contrary had instructed the bank to which those that were due were presented for payment, not to pay them or charge them to their account.

4th. That it was not clearly shown by the proof that the wife was entitled to hold on to these notes, but on the contrary, from the proof as it stood, a jury under proper directions from the Court as to the law, might well find that no relation of debtor and creditor, as between her husband and herself, existed, and that this transfer fell under the provision in section 1, of Article 45, of the Code, as amended by the Act of 1874, ch. 57, which declares, " that no acquisition of property passing to the wife from the husband after coverture shall be valid, if the same has been made or granted to her in prejudice of the rights of his subsisting creditors."

5th. That in the further progress of the case, for the purpose of determining this question, it will be competent for the wife, or any one to whom she may have assigned the notes, to come in as claimant and assert title to them.

APPEALS from the Court of Common Pleas.

In this case an attachment on original process was issued at the instance of Luckemeyer and Schefer, claiming to be creditors of John M. Keeler, and laid in the hands of Francis P. Stevens, trustee, under a deed of assignment, dated the 14th of August, 1882, from the said Keeler for the benefit of his creditors, and also in the hands of Seltz and Mertz, copartners, makers of certain notes delivered by them to said Keeler. The garnishees pleaded *non assumpsit* and *nulla bona.* The defendant pleaded *non assumpsit.* Issues were joined. Judgment was rendered for the plaintiffs against the defendant, in the short note case, and in the cases against the garnishees, for the plaintiffs on the first issue, and for the garnishees on the second issue. The case is further stated in the opinion of the Court.

The causes were argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J., for the appellants, and submitted for the appellees.

*William Reynolds,* for the appellants.

*Isidor Rayner,* for the appellees.

MILLER, J., delivered the opinion of the Court.

Under this attachment the validity of the deed from Keeler to Stevens dated the 14th of August, 1882, is assailed. By this deed Keeler conveyed "all and singular his bills receivable and book accounts on hand, together with all his property, real, personal, and mixed, where-

soever situated," to Stevens in trust to sell the same, and collect the debts "as soon as conveniently may be," and apply the proceeds, *first*, to the expenses incurred in the creation and execution of the trust, including commissions to the trustee, "such as are usually allowed to receivers in Courts of Chancery in this State, for like services;" *second*, "to pay in full, if sufficient, all the creditors of the grantor, and if not sufficient, then ratably and equally to them all, according to their respective amounts, without any preference or priority whatsoever," and *third*, to pay the balance, if any, to the grantor. After the attaching creditors had closed their testimony, the garnishees, before offering any testimony on their side, but reserving their right to do so in the event of their prayer being refused, prayed the Court to instruct the jury to the effect that this deed is a valid transfer of all Keeler's property to Stevens, "and their verdict must be for the garnishees, notwithstanding the jury may believe all the evidence offered by the plaintiffs." The Court granted this instruction, and to this ruling the plaintiffs excepted. The single question therefore, presented by this appeal, in the case against the trustee, is, was there any evidence in the case legally sufficient to authorize the jury to find that this deed was fraudulent and void as against the creditors of the grantor?

Before adverting to the proof we shall notice briefly the decisions of this Court as to the law applicable to such cases. In *Foley, Adm'r, c. t. a. vs. Bitter, et al.*, 34 *Md.*, 646, the deed after creating preferences, provided for the payment ratably of such other creditors as should within ninety days execute releases, and then for the payment of all other creditors. The Court held that if an assignment be made with the fraudulent intent to delay, hinder, and defraud creditors, and at the time of its execution be intended to be, and by *its terms* may operate as, an instrument in aid of the fraud, then it

Luckemeyor & Schefer *vs.* Seltz & Mertz, Garns., and Stevens, Trustee.

falls within the words as well as the mischief of the statute, and is void as fraudulent in fact; that in *such case* the innocence of the trustee or of the creditors named in the deed will not save it from condemnation under the statute if fraudulent in fact on the part of the grantor. In that case the Court set the deed aside, but placed their judgment "upon the distinct ground that it was proved to have been fraudulent in fact, and contained *stipulations for releases* which were intended to operate and, in fact, did operate in aid of the fraudulent acts of the grantors." In *Main & McKellip vs. Lynch*, (54 *Md.*, 658,) the deed conveyed all the property of the grantor, and neither made preferences nor exacted releases, but the proof showed not only that the grantor had been disposing of and secreting his property to defraud his creditors, but that Main, one of the trustees, was cognizant of such fraudulent acts and *aided in them*, and that the deed was also executed in furtherance of this fraudulent purpose. Upon this proof the question whether the assignment was fraudulent in fact was submitted to the jury, and they found against the deed and in favor of the attaching creditors. In *Strauss, et al. vs. Rose*, (59 *Md.*, 525,) the deed made preferences, but did not stipulate for releases, and the Court held, that though fair and valid on its face, such a deed may be made for the purpose of concealing or covering up the debtor's property, or to force creditors to make a compromise, or in pursuance of an agreement or understanding *with the assignee* or the preferred creditors, by which the assignor is to derive some advantage or benefit inconsistent with the legal rights and remedies of creditors, and if so, it is as much within the condemnation of the statute as if the fraud had been written on its face; but the burden of proof in such cases is upon the creditor assailing the assignment, and he must offer evidence from which the jury may reasonably find that though valid on its face, it is fraudulent in fact.    But the

Court found there was no proof that the assignment was made for the purpose of concealing the property of the assignor, nor of a secret trust or understanding with the trustee or any one else that the grantor was to derive any benefit from its execution as against the rights of creditors, and therefore sustained the ruling of the Court below in granting a prayer substantially like that in the present case, directing a verdict for the claimant. But in neither of these cases was it intimated that the decision in *Horwitz, Garnishee vs. Ellinger*, (31 *Md.*, 492,) where a deed identical in effect with the one now · before us was sustained, was not correct. In that case the Court said a general assignment for the benefit of all creditors is not condemned by the law as fraudulent, but on the contrary sanctioned and approved, and if the *act* of the grantors be such as the law authorizes and approves, the secret motives that prompted it are wholly immaterial, and they, therefore, decided that the fact that the grantors had, just before they executed the deed, fraudulently contracted a debt, did not deprive them of the right to make a general assignment of all their property for the equal benefit of all their creditors, including the one so defrauded, and that the latter could not, on this ground alone, successfully assail the deed and have it set aside.

Such being the decisions as to the law of the case, the question is, was the Court below right in directing a verdict for the garnishee, although the jury may believe all the evidence offered by the plaintiffs? and this requires a careful examination of that evidence. They first proved by Stevens, one of the garnishees, and the trustee in the deed, that immediately upon its execution Keeler delivered to him his books of account, and *eleven* promissory notes signed by Seltz and Mertz, of which seven were for $200 each, and four for $100 each, making in all $1800. They are all dated the 1st of August, 1882, and are payable, three of them at nine, three at twelve, three at

Luckemeyer & Schefer vs. Seltz & Mertz, Garns.; and Stevens, Trustee.

fifteen, and two at eighteen months after date. He also received at the same time a certificate for one share of stock in the National Fair Grounds Association, of the par value of $100, and an order for several oil paintings in the store of Seltz & Mertz, which they have agreed to deliver to him when the attachments are decided, if the deed be sustained. The book accounts amounted to about $377.58 of which he had collected, at the time he testified, about $280.76. This testimony of Stevens was read by the plaintiffs from his answer to one of the interrogatories filed with the attachment, to be answered by him as garnishee.

They then adduced evidence tending to prove that in the latter part of July, 1882, Keeler, who was then engaged in business in Baltimore as a merchant tailor, being indebted to the plaintiffs to an amount exceeding $3300, and to divers other persons in various sums, negotiated with Seltz & Mertz, who were carrying on the same business in Washington, and on the first of August effected a sale to them of his stock in trade and the lease of the premises in which he conducted his business, receiving in payment therefor $500 in cash, and *eighteen* notes amounting to $3030. These notes were all drawn by Seltz & Mertz as makers, payable to the order of Keeler, and dated the 1st of August, 1882 ; but several days afterwards he induced them to give him in substitution therefor other notes for like sums and similar in all respects, save that the new notes were made payable to the order of the makers and were by them endorsed in blank. He gave as a reason for this alteration in the form of the notes that he had agreed to transfer them to the plaintiffs in part payment of his indebtedness to them, (as they were his principal creditors, his other debts being very small and easily arranged) but did not wish to incur the liability of an endorser thereon. A comparison shows that Stevens, the trustee, received all these notes except seven, and of

Luckemeyer & Schefer vs. Seltz & Mertz, Garns., and Stevens, Trustee.

these seven, one was for $30, and five for $200 each, which were made payable at four months, (and therefore fell due on the 4th of December, 1882,) and the other was for $200 and payable at eighteen months.

They further proved that shortly after the form of the notes had been thus changed, Keeler, in conversation with one McCord, in regard to his affairs, said he would fix things so that his creditors would have to take what he would give them, or nothing; that shortly before the trial he stated to the plaintiffs' attorney, that on the 11th of August, he had transferred, by delivery, to his wife Martha E. Keeler, four of the five $200 notes which matured on the 4th of December, 1882, and one of the $200 notes which matured on the 4th of May, 1883; that on Saturday the 26th of August, 1882, Keeler was in Washington, and there offered for sale at a considerable discount, the four notes for $200 each, which matured on the 4th of December, but did not succeed in selling them because the persons to whom they were offered had been warned not to purchase them, by Seltz & Mertz the makers, in whose hands as well as in the hands of Stevens, an attachment had been laid on the 17th of August by the Manhattan Bank of New York for $500; that on the morning of the following Tuesday, (August 29th), Keeler came into the store of Seltz & Mertz, in Baltimore, and handed them a letter written by Mr. Stevens dated August 28th, in which he tells them he holds $1800 of their notes given to Keeler, and agrees that they shall retain $600 to abide the result of the attachment of the Manhattan Bank; that about the middle of November, Stevens stated to one of the firm of Seltz & Mertz, that one of their notes for $200 maturing December 4th, (and which one Turner had offered them in payment of a suit of clothes he had ordered of them, but which they declined to receive,) had been delivered to him by Keeler for attorney's fees; that on the 28th of December, 1882,

Luckemeyer & Schefer *vs.* Seltz & Mertz, Garns., and Stevens, Trustee.

Keeler called at the plaintiffs' office in New York City, and said he would give up to them, notes to the amount of $1800, which he had received from Seltz & Mertz in payment of the stock of goods he had sold them, on condition that the plaintiffs would waive their claim to the notes, to the amount of $1000, which he had transferred to his wife, adding that he thought she was entitled to retain notes to that amount, because she had mortgaged her house to the extent of $2000 to keep him in business, and had paid him the money, and he would give them other notes for $1800 if they would release their claim on the notes held by his wife; that four of the $200 notes which fell due on the 4th of December, were on the 28th of November deposited in the National Bank of the Republic in Washington, (the bank at which all the notes had been made payable) for collection, by John Conner, (a brother of Mrs. Keeler,) to whom they were returned on the 6th of December by the cashier, who had been instructed by Seltz & Mertz not to pay them or to charge them to their account, and that these notes had no other endorsements thereon than those of Seltz & Mertz and John Conner; that it appeared from the checks paid by the Mechanics National Bank, where Keeler kept his account, that the bank paid on the 15th of July, a check of Keeler for $1000, dated July 14th, payable to the order of his wife, and endorsed by her and also by himself.

This is all the testimony in the case which has the remotest bearing upon the point in controversy, and we think it quite clear that it fails to show that the trustee formed any combination with the grantor, or aided or abetted him in its perpetration, or was cognisant of any antecedent fraud, if the grantor, in fact, perpetrated any against the rights of his creditors. There is no direct evidence that he ever knew that Mrs. Keeler held any of these notes, or that Keeler was trying to sell any of them in Washington. The inference that he had such know-

Luckemeyer & Schefer *vs.* Seltz & Mertz, Garns., and Stevens, Trustee.

ledge, and that there was an understanding between them express or implied that he was to aid Keeler in covering up the transfers to his wife, sought to be deduced from the fact that he wrote the letter of the 28th of August, seems to us far-fetched and unreasonable. The inference obviously deducible from the contents of the letter itself is, that he wrote it simply to inform Seltz & Mertz, as garnishees and makers of the notes, that they should be protected against the attachment of the bank, and not be put to the risk of being called upon to pay the notes twice; and we see no good reason to infer that he had any other purpose or object whatever. Equally unreasonable is the inference sought to be made from the fact that Keeler, before the deed was executed, gave one of the $200 notes to Mr. Stevens "*for attorney's fees.*" There is nothing to show that it was so given for professional services to be thereafter rendered so as to bring the case within the rule laid down in *Nichols vs. McEwen,* 17 *N. Y.,* 22. If given, as we think it must have been, for fees already earned, it would be indulging in mere vague suspicion to adopt the inference suggested in argument, that some portion of such fees had been charged for legal advice in furtherance of a scheme by which Keeler hoped to provide for himself and his wife at the expense of his creditors. These are all the facts having, by possibility, any bearing against the good faith of the trustee, and we are of opinion they do not justify the inference that there has been any *mala fides* in his conduct.

Again the proof of any antecedent frauds, or fraudulent intent on the part of Keeler the grantor, is very slight. He sold out his stock in trade for $3530, but there is no evidence that he did this secretly or for an inadequate price. The proceeds of sale are all accounted for except the small note for the $30, and the $500 in cash, and even if he applied these sums to the support of his family and himself, it could hardly be said that he had

Luckemeyer & Schefer *vs.* Seltz & Mertz, Garns., and Stevens, Trustee.

made a fraudulent application of them, or that he intended by thus selling his property to benefit himself and defraud his creditors. Besides, if it be true, as stated in this testimony, that he was indebted to the plaintiffs for an amount exceeding $3300, in the latter part of July when he was negotiating this sale, he must have paid them more than half of it before the 4th of the following September, when they sued out this attachment, for in their application for the writ they only claim that he was then indebted to them in the sum of $1527.58. But the principal charge against him is that he passed and delivered five of these notes, amounting to $1000, to his wife. He says however that he did so because she had mortgaged her house to the extent of $2000, and had paid him the money to keep him in his business. Now it may be that he was mistaken as to his legal obligation to repay his wife this money, or in supposing that the relation of debtor and creditor had been created between them, but the facts as he thus states them, clearly remove all ground for imputing to him moral turpitude or wilful fraud in thus treating his wife as his creditor, and in refunding a part of the money he had received from her property.

Upon the whole then, and after a careful consideration of all the proof, and all inferences legitimately deducible therefrom, and in view of what has been said in the decisions to which we have referred, we do not think the testimony is legally sufficient to authorize a jury to find a verdict against the validity of this deed. We shall therefore affirm the judgment in the case in which the attachment was laid in the hands of Mr. Stevens, the trustee.

*Judgment affirmed.*

(Decided 8th February, 1884.)


But the result must be different in the case in which the attachment was laid in the hands of Seltz & Mertz,

Luckemeyer & Schefer *vs.* Seltz & Mertz, Garns., and Stevens, Trustee.

the makers of these notes, with respect to those that have been delivered to Mrs. Keeler. Assuming that these notes were fraudulently transferred to her, or that she was not a *bona fide* holder of them *for value,* they did not pass to the trustee under the deed. There is no statute in Maryland, as there is in some of the States, which has extended the powers of the assignee in this respect, and under the common law of assignments the assignee stands in the place of the assignor, and can assert no claim to property which the assignor might not. The assignment does not therefore carry with it to the trustee the title to property which the assignor has previously transferred in fraud of his creditors. *Burrill on Assignments, sec.* 110. In such case creditors are left to pursue their remedies with respect to such property just as if no assignment had ever been made. The plaintiffs as creditors of Keeler who transferred the notes to his wife, have, therefore the right to have the question whether she is a *bona fide* holder for value, or not, litigated and settled; and this, we think can be done under this attachment laid in the hands of the makers of the notes. The proof shows they have not paid them, but, on the contrary, they instructed the cashier of the bank to which the four that were due were presented for payment, not to pay them or charge them to their account. There was nothing decided in *Cruett vs. Jenkins & Chandler,* 53 *Md.,* 217, against the right of creditors to maintain such an attachment provided the notes are transferred to one who is not a *bona fide* holder for value, or who has, at the time he takes them, actual notice of the attachment. It was decided in that case that the *maker* of a negotiable promissory note cannot be charged as garnishee of the payee or endorser, if it appears that the note either before or after the service of the attachmant, has been transferred or indorsed over before its maturity to a *bona fide* holder for value, without actual notice to him of the attachment; and this is placed mainly upon the ground

that a contrary doctrine would destroy the negotiability of all promissory notes, and interfere injuriously with the daily business and transactions of men dealing with commercial paper. But this leaves open the question, and concedes the attachment will lie and may be enforced if it appears the note was transferred to one who is not a *bona fide* holder for value. Now in this case it is not clearly shown by the proof that Mrs. Keeler was entitled to hold on to these notes. The relation of debtor and creditor as between her husband and herself, by virtue of which alone the transfer to her by him can be sustained, is not clearly made out by the testimony on which the appellees rely. On the contrary, from the proof as it stands a jury, under proper direction from the Court as to the law, might well find that no such relation existed, and that this transfer falls under the provision in section 1, Art. 45 of the Code as amended by the Act of 1874, ch. 57, which declares "that no acquisition of property passing to the wife from the husband after coverture, shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors." We shall therefore reverse the judgment in this case and award a new trial in order that this question may be determined. It is hardly necessary to say that in the further progress of the case it will be competent for the wife, or any one to whom she may have assigned the notes, to come in as claimant and assert title to them.

*Judgment reversed, and*
*new trial awarded.*

(Decided 8th February, 1884.)