## CIRCUIT COURT OF BALTIMORE CITY

Filed January 18, 1889.

NINA C. DEMILL ET AL.
VS.
ANDREW REID ET AL.

*Wm. A. Hammond* for plaintiffs.

*James Mackubin* for himself.

*Arthur George Brown* and *Francis E. Pegram* for defendant, Reid.

*Harry M. Benzinger* for German Savings Bank.

WRIGHT, J.—

The first inquiry that it seems necessary to make is, what is the character of the interest which by the will of John Willett was devised to the children of Henry J. Willett?

It was earnestly contended by Mr. Mackubin, first, that it was a vested remainder, and he states the case thus: "Here the estate is given in trust for Belt's life; *then* to the children of Henry, unless Belt, then childless, leave a descendant, &c. The remainder vested in the children of Henry, living at testator's death, subject to be divested *pro tanto*, to let in any children that might afterwards be born to him, and, *in toto*, to let in any descendants of Belt that might be born and reach twenty-one years." And the cases he cites are cases which he assumes sustain his construction of the clause of the will as he has thus rewritten it for the testator.

He cites Tayloe vs. Mosher, 29 Md. 449; Stump vs. Jordan, 54 Md. 626; Engle vs. State, 55 Md. 540, and Kemp vs. Bradford, 61 Md. 320. All of these cases have been examined by the Court, and in the opinion of the Court all of them were decisions on very different provisions from those in the clause here submitted for construction, and were all cases of undoubted vested remainders. And further, the Court cannot agree with the counsel that the clause as rewritten above in any manner correctly states the same as it appears in the will of John Willett.

In the said clause of the two contingencies of John Willett Belt leaving children, and of those children reaching lawful age and leaving children, &c., are provided for before one word is said concerning any interest being limited to the children of Henry J. Willett.

Second. It was contended by Mr. Mackubin that if this interest did not present the case of a vested remainder, it was an executory devise, and he cites the cases of Hilleary vs. Hilleary, 26 Md. 288, and Snively vs. Beavan, 1 Md. 223, in support of this view. The provisions of the several wills under construction in these two cases undoubtedly created executory devises, a fee being limited on a fee, and the first fee having vested, the subsequent limitation could only be effective as an executory devise. I think the authorities fully dispose of the proposition of Mr. Mackubin that the clause of the will here under construction creates an executory devise.

In Doe d. Herbert vs. Selby, 2 Barnwell & Creswell, 926, the provisions of the will under construction were almost identical with those presented in this case, so much so that the learned counsel for Reid were justified in saying that it seemed as if the attorney who drew John Willett's will had before him, at the time of drawing it, the case of Doe vs. Selby. In that case there was a "devise to testator's son, G., for life, and from and after his decease unto all and every the child and children of G., lawfully to be begotten, and their heirs forever, to hold as tenants in common and not as joint tenants; but if my son G. should die without issue or leaving issue, and such child or children should die before obtaining the age of twenty-one years, or without lawful issue, then I give the same estates to my son T., my daughter A. S., and my son-in-law W. D., and to their heirs forever, as tenants in common and not as joint tenants." After the testator's death his son G. suffered a recovery, and died unmarried and without issue. Held, that in that event the devise over must take effect as a contingent remainder, and was therefore defeated by the destruction of the particular estate.

In that case, as in the case now before the Court, it was contended that the ultimate devisees took either by way of executory devise or vested remainder; "but," say the Court, "it is clear that where a devise may operate as a contingent remainder it cannot be considered as an executory devise. If a fee be given by way of *vested limitation*, but determinable, a remainder after that must be an executory devise; but if a *fee* is limited *in contingency* and upon failure of that estate is given over, that is a contingency with a double aspect and if the estate vests in one it cannot in the other. (Luddington vs. Kime, 3 Lev. 431.) But it may happen that an estate may be devised over in either of two events, and that in one event the devise may operate as a contingent remainder, and in the other as an executory devise. Thus, if George had left a child, a determinable fee would have vested in that child and then the devise over could only have operated as an executory devise. But George having died without having a child, the *first fee never vested* and the remainder ever continued a contingent remainder." (And see Crump d. Woolley vs. Norwood, 7 Taunt. 362, cited by the Court). The comment on Doe vs. Selby, in 2

Jarman on Wills, p. 876, is instructive in this connection. Says the learned author, "Sometimes a limitation is so framed as to take effect as a contingent remainder in fee in one event, and as an executory limitation engrafted on an alternative contingent remainder in fee in another event. Thus, in Doe d. Herbert vs. Selby, where the devise was to A. for life, and after his decease to his children in fee as tenants in common; and if A. should die without issue, or leaving such issue and such child or children should die under twenty-one, or (which was read *and*) without issue, then over to B. in fee. A. suffered a common recovery and *died without issue;* and it was held that in the event which had happened the limitation to B. would have taken effect as a contingent remainder and consequently was destroyed by the recovery.

It is not quite accurate to say in such a case as Doe vs. Selby that the limitation is a contingent remainder in one event and an executory devise in the other. There were, in fact, two alternative contingent remainders in fee, one of which was subject to an executory limitation in favor of the same person, who would have been the object of the alternative remainder.

Here in Doe vs. Selby we have a case decided by a unanimous Court and cited as law by high authority. No decision has been submitted to the Court where the authority in that case has been doubted, and the Court thinks that the reasoning on which the result was reached cannot be successfully attacked, and therefore is of the opinion that the estate which the children of Henry J. Willett took under the clause before the Court they took by way of contingent remainder. If this is so, when did the estate vest and in whom did it vest? I cannot conceive of its vesting at any other possible time than at the time of the death of the life tenant, John Willett Belt. But, although it may be conceded that the estate did then vest, still it may be contended that there was prior to that time an interest or a possibility in the children of Henry J. Willett that was "transmissible by descent and was devisable or assignable." In 4th Kent's Com. 261 and 262 (13th edition), it is stated: "It is settled that all contingent estates of inheritance, as well as springing and

executory uses and possibilities, coupled with an interest, *where the person to take is certain,* are transmissible by descent and are devisable and assignable." And in note C. p. 262, Buck vs. Launtz, 49 Md. 439, is cited as one of the authorities for the proposition, "If," however, continues the text "the person be not ascertained, they are not then possibilities coupled with an interest, and they cannot be either devised, or descend, at common law."

Now, in Buck vs. Launtz and in Snively vs. Beavan (1 Md. 223), the persons were ascertained and there were possibilities coupled with an interest and therefore these transmissible qualities appertained to the interest devised; but in the case before us there could by no possibility be an ascertainment of the persons who were to take, until after the death of the life tenant, Belt, and these transmissible qualities did not exist.

I think the contention of the counsel for Reid, that "nothing is clearer in law than that under an ultimate limitation upon a contingency to a *class of persons* by a clear and certain designation, none but the persons in being at the time when the contingency occurs and then answering to the description can take," is supported by authority. In Godfrey vs. Davis, 6 Ves. Jr. 49, the following language is found: "It is clearly established by De Visme vs. Mello, 1 Brown's Ch. cases, 537, and many other cases, that where the testator gives any legacy or benefit to any person, not as *persona designata,* but under a qualification and description at any particular time, the person answering that description at that time is the person to claim; and, if there are any persons answering that description, they are not to wait to see whether any other person shall come *in esse;* but *it is to be divided among those capable of taking when by the tenor of the will he intended the property to vest in possession.*" (And see 23 Wend. 522). It has been very earnestly and ably contended by the counsel for the plaintiffs that the word "children," as used in the 6th clause of John Willett's will, should be construed so as to embrace "remoter descendants" than "immediate offspring." I have examined the authorities referred to by counsel and others not referred to, and I have come to the conclusion that unless there is an "evident and manifest in-

tention," to be gathered from the will, that the term children should be so extended, the word will be construed to mean what it primarily means, that is, "*immediate offspring.*" In Stump vs. Jordan, 54 Md. 631, the Court says: "As said in 2 Washb. on Real Property (4th Ed.), 603, the recent cases show that the words 'child,' or 'children,' are in their usual sense words of purchase and are always so regarded unless the testator has unmistakably used as descriptive of the estate given and not to designate donees. We find nothing in the will manifesting a general and main intent that the remote descendants of the niece should take the land in preference to the testator's heirs at law."

In Cutter vs. Doughty, 23 Wend. 522, the Court says in substance that in cases which let in the word *children* in its artificial latitude, it is obvious from the explanations given in the will that all the *issue* of the legatees were intended to be provided for, or there were no children, but only grandchildren, so there was a necessity to look out of the will and extend the word, in order to prevent its failing of all effect. "And by several cases it is agreed that to warrant a departure from the clear and settled meaning of the words there must be either such strong necessity, or, at least, a *clear* explanation."

In the will of John Willett I find neither a "strong necessity" nor a "clear explanation." The will was evidently drawn by counsel learned in the law, and every expression in regard to the limitations as to who were to take seems to have been carefully chosen. I find no general intent in the will that would negative the particular intent here expressed. It may indeed fully appear by the will, as contended by counsel for the plaintiffs, that it was the evident intention of the testator that no intestacy should take place in relation to any property owned by him, and he evidently thought that in limiting the property mentioned in the sixth clause to a class, such as the children mentioned, no intestacy would be likely to occur; the result proves that he was correct in this surmise, as no intestacy has occurred.

Again, if it should be determined that each of the children of Henry J. Willett living at the death of the testator, John Willett, would take such an interest as would be "transmissible by descent and devisable or assignable," we should have the case contended for by Mr. Mackubin of a share of a deceased child (her child having died intestate and without issue), becoming the property of the testator's son, Henry J. Willett, and being by him devised to his son, producing at once a state of affairs such as it cannot be supposed the testator for a moment contemplated.

If, on the other hand, we construe "children" in this case to mean "descendants" living at the time of Belt's death, such descendants would take in common per capita, and we would have the singular result of not only the children of deceased children sharing in equal proportions with the living children, but we would also have the living children of living children sharing equally with their parents—a result certainly not anticipated by the testator.

After as careful an investigation as I have been able to give to the subject, I am of opinion—

First: That Silas S. Willett, Alice A. Willett and Eliza B. Browne, the children of Henry J. Willett, living at the time of the death of John Willett Belt, became owners, at the time of Belt's death, as tenants in common, of the reversions and ground rents mentioned in the sixth clause of John Willett's will.

Second: That James Mackubin, as grantee of Silas S. Willett and wife, and Alice A. Willett, is now the owner of their respective interests in said ground rents and reversions.

Third: That Andrew Reid, as grantee of Eliza B. Browne and her husband, is now the owner of Eliza B. Browne's interest in and to the lot of ground and ground rent on Exeter street.

Fourth: That the German Savings Bank of Baltimore, as grantee of Andrew Reid, is now the owner of Eliza B. Browne's interest in and to the lot of ground and ground rent at the southwest corner of Baltimore and Eutaw streets.

Fifth: That Nina C. Demill and Laura O. Demill have no right, title interest or estate in and to the lots of ground, ground rents and reversions mentioned in the said 6th clause of said will.