Collier and Shea, Ex'rs *vs.* Hanna and Smith, *et al.*
Buschmann *vs.* Same.

money on deposit in this Bank and the decrees below must therefore be affirmed.

*Decrees affirmed.*

(Decided 12th June. 1889.)

LOUISA COLLIER and JAMES W. SHEA, Executors of DONALD R. COLLIER *vs.* J. LELAND HANNA and JAMES C. SMITH, Trustees in Insolvency, and others. VICTOR H. BUSCHMANN *vs.* SAME.

*Attachment under Act of 1864, ch. 306—Fraudulent intent— Fraudulent conveyance—Assignment by one Partner to Another — Partnership creditors—Attachment against a Firm—Jurisdiction in Attachment.*

Where an attachment on original process, under the Act of 1864, ch. 306, is issued against F. and C. upon affidavits alleging that the attaching creditors have "good reason to believe that the said F. and C., copartners trading as F., C. & Co., have assigned, disposed of, or concealed, or are about to assign, dispose of, or conceal, their property, or some portion thereof, with intent to defraud their creditors;" unless it be made out that actual or constructive fraud was committed jointly by F. and C. the attachment must, on motion, be quashed.

Where the principal object the partners expected to attain by adopting the course they did, was to coerce their creditors into a compromise of their claims, the law will condemn every conveyance intended to accomplish such object as a fraud upon the creditors.

A conveyance, apparently fair and valid, if made for the purpose of covering up the debtor's property, or to force creditors to accept a compromise, is as much within the condemnation of the statute as if the fraud had been written on its face.

Whether a valid transfer can be made by one partner to another, where the firm is insolvent, is, to say the least, a matter of the gravest doubt.

Collier and Shea, Ex'rs *vs.* Hanna and Smith, *et al.*
Buschmann *vs.* Same.

Where one of two insolvent partners transferred all his interest in the partnership assets to his copartner, who on the same day made an assignment for the benefit of creditors, and such assignment made no provision for the application of the partnership assets to the payment in the first instance of the partnership creditors, such assignment, if effect were given to it, would entirely destroy the privilege or preference to which the partnership creditors were entitled, of having the debts due them paid out of the assets of the firm in course of liquidation, to the exclusion of the separate creditors of either partner, and is fraudulent and void as against partnership creditors.

Where an attachment is issued against a firm, under the Act of 1864, ch. 306, (Code of 1888, Art. 9, sec. 39,) and one of the partners resides within the jurisdiction of the Court issuing the attachment, it is sufficient to sustain the attachment.

APPEALS from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and McSHERRY, J.

*Frank Gosnell,* and *Thomas M. Lanahan* for the appellants.

*B. Howard Haman,* and *William S. Bryan, Jr.,* for the appellees, Hanna and Smith.

*Fielder C. Slingluff,* for himself as trustee and garnishee.

The cause was re-argued before ALVEY, C. J., STONE, MILLER, IRVING, and McSHERRY, J.

*Frank Gosnell,* and *Thomas M. Lanahan,* for the appellants.

Collier and Shea, Ex'rs *vs.* Hanna and Smith, *et al.*
Buschmann *vs.* Same.

*William S. Bryan, Jr.,* and *John Prentiss Poe,* for the appellees.

MILLER, J., delivered the opinion of the Court.

A re-argument was ordered in this case at the instance of one of the Judges, who concurred in the disposition heretofore made of it, and upon this re-argument, which has been very able, we are all of opinion that we must adhere to the conclusions we reached on the original hearing.

Shortly stated, the facts are these: John E. Clark and George H. Forster were partners in the wholesale liquor business, under the firm name of "Forster, Clark & Co.," and on the 14th of December, 1887, they executed an agreement to dissolve the partnership, and a notice of dissolution for publication in the newspapers. Clark then executed a transfer of all his interest in the firm assets to Forster, and the latter made an assignment for the benefit of creditors. All these documents were executed on the same day, and will be presently considered. The notice of dissolution was published at once, and the assignee of Forster immediately took possession of the firm assets, which were delivered to him by Forster, sold the same and collected the proceeds. Shortly afterwards, on the 13th and 14th of January, certain creditors of the firm issued attachments against them on original process, under the Act of 1864, ch. 306, and had the same laid in the hands of the assignee. Subsequently, on the 16th of January, 1888, proceedings were instituted in the insolvent Court by other creditors to have Forster and Clark, "co-partners trading or lately trading as Forster, Clark & Co." adjudicated insolvents. At first, each of them resisted these proceedings, mainly upon the ground that their firm had ceased to exist on the 14th of December, 1887, and

therefore could not have committed the acts of insolvency alleged in the petition of the creditors. But they afterwards abandoned this defence, and agreed to the passage of an order declaring them insolvents, *upon condition* that the petitioning creditors should *not oppose* their application for a final discharge from their debts. The Court thereupon, on the 7th of April, 1888, passed an order adjudicating both of them insolvents. The permanent trustees in insolvency then intervened in the attachment cases and moved to quash the writs of attachment. This motion was heard by the Court, upon testimony taken on both sides. The Court ordered the attachments to be quashed, and from that order the attaching creditors have appealed.

The affidavits upon which the attachments were issued, following the language of the Act of 1864, are, that the attaching creditors have "good reason to believe that the said George H. Forster and John E. Clark, copartners trading as Forster, Clark and Company, have assigned, disposed of, or concealed, or are about to assign, dispose of, or conceal their property or some portion thereof, with intent to defraud their creditors." The main ground relied on in the motion to quash, is that these allegations in the affidavits are "not true," and to this most of the testimony in the record is directed. The affidavits allege that the fraud, actual or constructive, was committed by both Clark and Forster, and we agree that if such joint fraud is not made out, the attachments were properly quashed. To this question therefore we have given our best consideration. It depends upon the testimony of the witnesses, with legitimate inferences to be drawn therefrom, and the construction and legal effect of the instruments executed on the 14th of December, 1887.

We find from the testimony that on that day the firm as well as the individual partners were insolvent, and

that both of them knew that such was their condition.
The partnership assets consisted of about $80,000 worth
of whiskies hypothecated for $65,000.   Their stock in
store with bills receivable and open accounts amounted
to $33,000.   Besides the secured debts of $65,000 they
owed unsecured debts to the amount of $58,000, and they
had outstanding obligations about to mature.   With this
knowledge of their condition, they met in Mr. Slingluff's
office on that day, each represented by counsel.   For
what purpose?   Undoubtedly to consult and determine
what they should do under the circumstances and in
their insolvent condition.   At that time the partnership
assets were unquestionably liable primarily for the
debts by the firm.   The firm as well as the individual
partners were then insolvent, and knew that they were
so.   The obvious, honest, and straightforward course
for them to pursue, if they were unwilling to go into
voluntary, or be thrown into involuntary, insolvency,
was for both of them to convey by a joint deed, all their
partnership and individual property to an assignee for
the benefit of their partnership and individual creditors.
But they did not do this; and every thing that was done
on that day we regard as one continuous transaction, of
which all the parties were cognizant, and intended should
be carried out from the start.   To our minds the evidence
shows this very clearly, and the parties must be held to
have contemplated the consequences of their acts.

Now what was done?   In the first place, the partners
of this insolvent firm agreed in writing, between them-
selves, that the firm should at once pay a loan of $500
to the Mechanics Bank, and, as soon as this payment was
made, an agreement of dissolution should be signed; that
Clark should assign his interest in the firm to Forster,
and that, after paying the amount properly found to be
due to the firm by Clark, the said Forster is to pay the

Collier and Shea, Ex'rs *vs.* Hanna and Smith, *et al.*
Buschmann *vs.* Same.

balance of collection made by him from open accounts of "J. E. Clark & Co.," and transfer the uncollected open accounts to Clark; and Forster agrees to use due diligence in collecting said accounts. The explanation of the accounts here referred to is this: Prior to the formation of their partnership, Clark had been doing business under the firm name of "J. E. Clark & Co.," and Forster under the firm name of "Forster, Muller & Co.," and they each brought in and contributed as part of the assets of the new firm, the assets of these former firms. The agreement and notice of dissolution was next executed, by which their creditors were informed that Forster would settle up the affairs of the firm.

Then comes the transfer by Clark, which is peculiar in its terms. It is signed by Clark alone, and by it he, for "value received," assigns to Forster all his interest in the firm assets of Forster, Clark & Co., and he then stipulates that "said George H. Forster shall diligently collect all the assets and effects of said firm, and apply the same to the payment and extinction of all the debts and obligations of said firm; *and in the event of making a settlement with the creditors thereof by extension or otherwise,* then, and in that event, the said George H. Forster shall assume all the obligations of said firm, the said Clark to be liable to said Forster in the amount of $7,199.25, as shown by the books of said firm to be due by him to said firm of Forster, Clark & Company on November 1st, 1887, less what, if any, amount the same may be properly reduced by credits to be given to said Clark since that date, and which said balance of indebtedness shall be reduced, as far as may be, and extinguished, if possible by the proceeds of the collection of the accounts of J. E. Clark & Co." Then follows the assignment by Forster to Slingluff which consummated the entire transaction. This deed recites that Forster

Collier and Shea, Ex'rs *vs.* Hanna and Smith, *et al.*
Buschmann *vs.* Same.

"is indebted unto sundry persons in various sums of money which he is unable to pay in full," and conveys to Slingluff "all his, the said George H. Forster's estate and property of every nature, kind or description, real and personal, in possession or in expectancy, and wheresoever situated," in trust to take possession of, and convert the same into money, without unnecessary delay, and "to apply the proceeds, after the payment of the expenses of this trust, including a reasonable commission to the trustee for his services according to the law in such cases, to the payment in full of all the debts due and owing by the said George H. Forster without preference or priority, except as by law provided, if the net proceeds shall be sufficient therefor, and if insufficient then to the payment of the aforesaid debts *pro rata*, without preference or priority, except as aforesaid;" and then "after the payment in full of all debts aforesaid, and all claims and demands whatsoever against the said George H. Forster for which he may be liable," in trust to pay the surplus, if any, to Forster, his representatives or assigns.

Now, as we have said, the testimony, in our judgment, shows clearly enough, that at the time and on the day, these papers were executed, the firm and the individual partners were insolvent, and that each of them was perfectly aware of this fact. Nor have we any doubt but that this condition of insolvency was the moving cause of the action they then took. What did they intend or hope to accomplish by it? If their purpose was to deal honestly and fairly with their creditors, no dissolution, no transfer by Clark, followed by a separate assignment by Forster, was necessary. This circuity of transfer is, of itself, under the circumstances fraught with suspicion. A simple assignment to Mr. Slingluff by both of them, of all their partnership and individual property for the payment of partnership and individual debts, was all

that was needed. The testimony gives no explanation why this course was not taken. But we think it plain that one, and perhaps the principal, object they expected to attain by adopting the course they did, was to coerce the creditors into a compromise of their claims. Indeed this seems to us apparent from the face of Clark's transfer; and the proof shows that as soon as Mr. Slingluff got possession of the firm assets a meeting of the unsecured creditors was called, and an offer made to them of sixty cents in the dollar, which they refused to accept. It is scarcely necessary to say that if this was their purpose, the law condemns every conveyance intended to accomplish it, as a fraud upon the creditors. A conveyance, apparently fair and valid, if made for the purpose of concealing or covering up the debtor's property, or to force creditors to accept a compromise, is as much within the condemnation of the Statute as if the fraud had been written on its face. *Strauss, et al. vs. Rose*, 59 *Md.*, 531; *Luckemeyer & Schefer. vs. Seltz & Mertz, et al.*, 61 *Md.*, 317. But whether a valid transfer can be made by one partner to another where the firm is insolvent, is, to say the least, a matter of the gravest doubt. In the case last cited this Court was careful to confine the rule to cases where the "firm is solvent," and in a very recent case the Court of Errors and Appeals of New Jersey, in a case much like this, held that if a firm and all its members be insolvent, and the insolvency be patent to all the members, a transfer of the partnership property to one of the firm will be considered as made with intent to hinder, delay, and defraud the firm creditors, and that a voluntary conveyance of all the firm property to one of the partners is invalid as against existing firm creditors. *Arnold vs. Hagerman, et al.*, 17 *Atlantic Reporter*, 93. In *Case vs. Beauregard*, 99 *U. S.*, 126, the Court say the partnership was entirely

solvent when the transfer was made, and all the partnership effects had been transferred to others for valuable consideration.

If we are right, then, in the conclusions we have thus drawn from the testimony, and that it was the purpose of these parties in executing these several conveyances to coerce the creditors of the firm to a compromise, they are all fraudulent and void as against such creditors, and it matters little what may be the actual construction of the assignment from Forster to Slingluff. But as counsel for the appellees have strenuously argued that it is perfectly valid, and that it devotes the partnership effects to the payment of partnership debts, we shall briefly consider the question. On its face the assignment makes no reference to partnership property, and no one reading it could infer that there ever had been a partnership between the grantor and Clark. It simply conveys Forster's property for the payment of Forster's debts. But assuming that Forster by the transfer from Clark had obtained a valid legal title to all the partnership assets, still he was bound by this transfer, as well as by the law, to apply these assets to the payment in the first place of the partnership creditors. But his deed does not do this. If carried out according to its terms, the individual creditors of Forster would, at least, be entitled to come in and share with the partnership creditors in the proceeds of these assets, if not to be paid in preference to such creditors. We find ourselves utterly unable to put any other construction on the plain terms of this instrument. It entirely ignores, and, if effect were given to it, it would entirely destroy, the privilege or preference to which the partnership creditors are entitled of having the debts due to them paid out of the assets of the firm in course of liquidation to the exclusion of the separate creditors of either partner. *Gable, Trustee, &c.*

vs. *Williams, et al.*, 59 *Md.*, 54. In no essential particular, so far as we are able to judge, does this assignment differ from that which was declared fraudulent and void as against partnership creditors in *Gable vs. Williams*, if it is to be regarded as conveying and disposing of the proceeds of the partnership property. It has been contended, however, that it may be taken as simply conveying Forster's individual property and is therefore valid, because a debtor has a right to convey a part of his property in payment of his debts, or of particular debts, if he exacts no releases. No doubt a debtor can so convey a part of his property, but if this is the construction to be placed on this assignment, it only strengthens the inference we have made from the testimony, that it was intended, and was actually used, for the purpose of bringing the creditors to terms, or coercing them to a compromise, and is for that reason fraudulent and void.

We have given to this question our best consideration, and are clearly of opinion that the averments in the affidavits of the attaching creditors are fully sustained by the proof in the case.

The only other ground alleged in the motion to quash, that need be noticed is that Forster and Clark were both residents of Baltimore County at the time the suits were instituted and the writs of attachment issued. As to this little need be said. It was not pressed in the reargument, and we think it quite clear from the evidence that Clark was a resident of Baltimore City at the time the attachments were issued, and liable to suit there. This renders an inquiry into the fact whether Forster had, or had not, voluntarily submitted to the jurisdiction of the Court wholly unnecessary. Where one of two partners resides within the jurisdiction of the Court issuing the attachment, it is sufficient to sustain the attachment. Such is undoubtedly the proper construc-

tion of the Act of 1864. If it were otherwise, then if one partner lived in the county, and the other in the city, no attachment could be issued against the firm.

It follows that the order or. judgment quashing the attachments must be reversed, and the cause remanded for a new trial and further proceedings.

> *Order reversed, and*
> *cause remanded for a new trial*
> *and further proceedings.*

